In re OPENING OF NORTH FIFTH ST. IN CITY OF OLEAN.

(Supreme Court, Appellate Division, Fourth Department.  July 23, 1901.)

**1. EMINENT DOMAIN—TAKING PROPERTY FOR STREET—DAMAGES.**

Where real estate is subject to an easement requiring the owner to keep open a private way having all the characteristics of a public street, its subsequent taking for a public street entitles the landowner to nominal damages only.

**2. EASEMENTS—ABANDONMENT—ESTOPPEL.**

Where the owner of land sells a portion constituting a private way, and his grantee erects a house thereon, with knowledge of the grantor and without objection on his part, it is an abandonment which will estop the owner from afterwards claiming such right of way.

**3. SAME.**

Where a property owner entitled to a private right of way having all the characteristics of a public street on adjoining lands knowingly permits the owner of the land to erect a house on the private way without objection, it constitutes a waiver of his easement in the way.

**4. ADVERSE POSSESSION—TITLE BY.**

Where land forming part of a private right of way was sold in 1878, and the grantee entered thereon, and erected a house, and the persons entitled to the right of way did not object, though knowing such facts, and the property was used for a residence until 1900, the grantee acquired valid title thereto by adverse possession.

Appeal from trial term, Cattaraugus county.

Proceedings for the opening of North Fifth street, in the city of Olean, N. Y., through the lands of Mandeville Robins and another. From an order of the county court affirming an award of damages made by the commissioners, the said landowners appeal.  Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Dana L. Jewell, for appellants.

Allen J. Hastings, for respondent city of Olean.

WILLIAMS, J.  The judgment and order appealed from should be reversed, and a hearing ordered before other commissioners, with costs of the appeal to the appellants to abide event.

The commissioners awarded to the appellants nominal damages only, apparently upon the ground that there were existing rights of way in third persons over their premises co-extensive with the right of way to be taken by the city.  In 1836 the Olean Land & Hydraulic Company was the owner practically of the whole of what is now the city of Olean.  It caused a map of what it then termed the "Village of Olean" to be made, which spread such village over a large portion of the surrounding country.  Upon this map the lands were laid out into blocks, which were subdivided into lots, and between the blocks were streets and avenues.  This map was filed in the county clerk's office, and was known as the "Gosseline Map." One of the streets upon that map was State street, which was laid out and opened, and has been traveled since 1850.  Another street on that map was Fifth street, extending from State street northerly at right angles between blocks 80 and 81.  This street has never been laid out, opened, or traveled, and is the street involved in this

proceeding. Samuel Oosterhoudt, in 1867, acquired title to these two blocks, 80 and 81, and the whole of Fifth street between these blocks. The first conveyance he made of any of this property in these two blocks and street was June 29, 1875, when he conveyed to Emery Potter lot No. 9 in block 81. This lot faced on Fifth street, and at this time Potter had no other way of getting from this lot to any other street laid out or opened except through Fifth street. About a year thereafter, and on August 9, 1876, Oosterhoudt conveyed to Potter another lot in the same block, 81, being No. 11, lying on the corner of Fifth street and State street, and adjoining lot No. 9; so that Potter then had a way out to State street from both lots, 9 and 11, over the latter lot. After this, and on September 15, 1878, Oosterhoudt contracted to sell to Mary J. Robins the property involved in this proceeding, being a portion of Fifth street adjoining block 81 on the east and State street on the south, a rectangular piece 25 feet on State street and 138 feet on block 81. Fifth street was 60 feet wide, so that the whole of the land contracted to Mrs. Robins lay entirely within that street. Mary J. Robins was the wife of Mandeville and the mother of Elizabeth Robins, the property owners in this proceeding. This contract was negotiated by Mandeville Robins. The property, as Oosterhoudt well knew, was purchased for the purpose of building a house thereon. The land was then a swamp, with alders and a frog pond around it. The Robinses took possession of the property, and entirely inclosed it with a fence, built a house thereon costing $600 to $700, and filled in the lot from year to year as they could get means. Mary J. Robins and Oosterhoudt both died, and thereafter, and December 29, 1888, the heirs of Oosterhoudt conveyed the property described in the contract to the property owners in this proceeding, who were then, and still are, in possession thereof, and they and Mary J. Robins had been since the contract was made in September, 1878. Oosterhoudt had given no deeds of lands in blocks 80 and 81 prior to the contract to Mrs. Robins, except the deeds of lots 9 and 11 to Potter. When the contract was given to Mrs. Robins, Potter had two houses upon his lots 9 and 11, both of which faced upon State street, and he came to State street from both houses by a roadway entirely east of the Robins property, upon lot No. 11, and never used Fifth street at all. Both Oosterhoudt and Potter saw the Robinses take possession of their property, put a fence around it, build a house thereon, and fill in and improve and occupy the land through all the years from 1878 down without any objection whatever, or any suggestion that they had any easement by way of a right to use the land as a part of Fifth street. About the time the Robinses took possession of their property, Potter brought a piece of gravestone, and agreed with Robins where the corner between them was on State street at the southwest corner of block 81, and the stone was set in the ground at that point to mark such agreed corner. This proceeding was commenced by the common council of the city of Olean. The contention of the city of Olean is that there are third persons who have an easement in Fifth street, and who can compel the property owners to remove their

house, and keep the street open to the full width as a private way, with all the characteristics of a public street, and therefore the estate of the property owners is in no practical sense depreciated or diminished by the opening of it as a public street; and this was the theory upon which the commissioners awarded to these property owners only nominal damages. The law involved in this contention is correctly stated in Village of Olean v. Steyner, 135 N. Y. 341, 32 N. E. 9, 17 L. R. A. 640, and cases cited; Re Adams, 141 N. Y. 297, 36 N. E. 318, and cases cited; Lewis v. Railroad Co., 162 N. Y. 202, 203, 56 N. E. 540. The difficulty is as to the facts in this case. There are here no such third persons. · Oosterhoudt, when he conveyed lots 9 and 11 to Potter, and sold and contracted the property in question to Mrs. Robins, was the owner of all the property to which any easement in Fifth street could attach. He sold to Mrs. Robins, for the purpose of the erection of a house and the improvement of the property as their home, and he sat by and saw the land fenced in, the house built, and the property improved. The whole of the Robins property was within the boundaries of the street. Certainly, he could not thereafter be heard to claim any easement in the street for the benefit of the land retained by himself upon the street. He could have abandoned the street, and all right to have one laid out for his benefit; and he did so, and was estopped forever thereafter from alleging any easement in the street in himself. Potter, under his two deeds, which were prior to the contract to Mrs. Robins, very likely acquired an easement in the street, certainly as to lot No. 9 for the year before he purchased lot No. 11, because he during that time had no other way to reach State street or any other street opened and traveled, except by way of Fifth street. But he agreed with Mrs. Robins as to the corner between them and saw the Robinses fence the land, build a house, and improve the property, knowing it lay entirely within the street boundaries, and made no objection whatever to it. It must be held that he waived whatever easement he had or was entitled to over the Robins property, and abandoned the same, and was estopped from claiming any easement in the street. And it may be said further that the Robinses acquired title to their property relieved of any easements in favor of Oosterhoudt or Potter by adverse possession. From the very nature of this property, and the purpose it was purchased for, and the use made of it, it could not be said the parties intended the Robins title should be in subjection to the purposes of the street, and should be surrendered up when it was desirable to open the street. These are the only two third parties who could lay any claim to an easement in the lands in question, who could compel these property owners to remove their house, and keep this street open to the full width as a private way, with all the characteristics of a public street. All the houses built on Fifth street have been so built very recently, and title taken to the property since the Robins contract, occupation, and improvement of their property, and with notice of their rights. None of them have any easement they can enforce against these property owners, and none of them are parties to this proceeding. Our conclusion, therefore, is that the judgment or order affirming the award

of the commissioners appealed from should be reversed, with costs to the appellants to abide event, and a rehearing ordered before other commissioners. All concur.