## In re CITY OF BUFFALO.

(Supreme Court, Special Term, Erie County. January, 1910.)

1. EASEMENTS (§ 14*)—RESERVATIONS.
  A right of way cannot as a general rule be reserved to a stranger.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. § 40; Dec. Dig. § 14.*]

2. EASEMENTS (§ 44*)—RIGHT OF WAY.
  In determining the width of a way, the grant thereof will be construed with reference to the place in which the way is granted and the circumstances under which the grant was made, and, where a way is granted over a piece of land of a stated width, it will depend on the circumstances whether the reference is to the width of the way, or is merely descriptive of the land over which the grantee may have a reasonably necessary way.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. § 99; Dec. Dig. § 44.*]

3. DEEDS (§ 90*)—CONSTRUCTION—INTENTION OF PARTIES.
  In construing a grant to ascertain the intention of the parties, in case of doubt, the grant will be taken most strongly against the grantor.
  [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 235; Dec. Dig. § 90.*]

4. EASEMENTS (§ 44*)—RIGHT OF WAY—CONSTRUCTION.
  A conveyance of land to a grantee, together with a right of way over a strip 62½ links wide, extending to a road, and a conveyance to a third person substantially contemporaneous, subject to the right of way for. the use of the grantee, "being a strip of land 62½ links wide," merely mean a right of way over the strip generally, and not a right of way 62½ links wide.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. § 99; Dec. Dig. § 44.*]

5. EASEMENTS (§ 36*)—RIGHT OF WAY—ABANDONMENT—EVIDENCE.
  Evidence *held* to show that the right of a private way was abandoned by nonuser.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77, 93; Dec. Dig. § 36.*]

6. EASEMENTS (§ 30*)—ABANDONMENT—NONUSER.·
  An easement acquired by grant may be extinguished by abandonment by nonuser for 20 years under circumstances showing an intention to surrender the easement.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. §§. 77–79; Dec. Dig. § 30.*]

7. EASEMENTS (§ 36*)—ABANDONMENT—NONUSER.
  The question of intention to abandon an easement acquired by grant is one of fact ascertainable from the circumstances of the case.
  [Ed. Note.—For other cases, see Easements, Cent. Dig. §§ 77, 78, 93; Dec. Dig. § 36.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

8. **EMINENT DOMAIN (§ 133\*)—COMPENSATION.**

Where land on which a building is erected is taken by a city for street purposes, rendering it necessary to either destroy the entire building or move it a specified distance and replace the cellar thereof, the owner is entitled to compensation based on the value of the building as real estate; it not appearing that it was erected in bad faith to enhance the damages.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 358; Dec. Dig. § 133.\*]

9. **EMINENT DOMAIN (§ 136\*)—COMPENSATION.**

Where a portion of a building is taken for a public use, the measure of damages to the building is the difference between the value of it as it stood before and the value of the remaining portion after the taking.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 363, 364; Dec. Dig. § 136.\*]

Application by the City of Buffalo to acquire lands in fee simple for the purpose of widening Grider street between Delavan avenue and Kensington avenue. On motion to confirm report of commissioners of appraisal. Report set aside, and a rehearing directed before the same commissioners.

Louis W. Desbecker, Corp. Counsel, and William B. Frye, Asst. Corp. Counsel, for city of Buffalo.

Coatsworth, Diebold & Kraft, for Charles W. West.

Robert F. Schelling, for Ziegele Brewing Company.

MARCUS, J. This is a motion by the corporation counsel of the city of Buffalo to confirm a report of commissioners of appraisal heretofore appointed to ascertain the damage in a proceeding by the city of Buffalo to acquire certain lands for the widening of Grider street.

The commissioners by their report have determined that Charles W. West, individually and as trustee, is the owner of a right of way over the intervening premises of the west side of Grider street between the property of which Charles W. West was the owner at the time of his decease and Delavan avenue. The city of Buffalo took 10¼ feet in this proceeding from the lands abutting on the westerly side of Grider street affected by this right of way, and the commissioners of appraisal have determined that the damages for this portion of the property shall be divided between the owner of the right of way and the owners of the fee subject to the right of way in the proportion of one-half to two-thirds, and have made their awards accordingly. That is to say, they have awarded to Charles W. West, individually and as trustee, the sum of $391.17 as his proportionate share of the damages for the 10¼-foot strip taken from the right of way, and have allowed to the respective owners the sum of $782.34 for their share thereof.

The Zeigele Brewing Company, which owns premises at the northwest corner of Grider street and Delavan avenue, having a frontage of 60 feet on Delavan avenue and a depth of 103 feet on Grider street, object to the confirmation of the report because it failed to receive an award for its building, which is about 28 by 71 feet—2½-story frame, with a cellar 28 by 43 feet under it. The building was erected shortly after its purchase at a cost of $9,676, which, together with the land

and building, amounts to $11,026. The amount awarded in the proceeding to the brewing company was $142.33. It is necessary either to destroy the entire building or move it 10¼ feet to the west, replacing the cellar. For this the commission gave as total damages to this parcel $213.50 and divided the amount two-thirds to the brewing company and one-third to Charles W. West by reason of West's claim of a right of way over the premises or land taken. The commissioners made the award upon the theory that Charles W. West had a right of way over the parcels of land taken, and for that reason neither the Ziegele Brewing Company nor the owners of the other parcels were entitled to full compensation for their respective parcels independent of the servitude, nor was the Ziegele Company entitled to any damages on account of buildings or expense of removal of same.

It appears that in 1847 Bersch conveyed to Frick "together with a right of way over a strip of land 62½ links wide bounding on the easterly line of said lot No. 11 and extending from the southeasterly corner of the premises above conveyed to the Grider Road" (now Delavan avenue). About the same time he conveyed to Werle the southerly parcel, "subject to a road or right of way for the use of John Frick, his heirs and assigns forever, extending from the southeasterly corner of said Frick's land to the Grider Road, being a strip of land 62½ links wide bounding on the easterly line of said lot No. 11." These conveyances were made in pursuance of a partition agreement. In 1847 or 1848 Wolfer became the owner of both parcels, whereupon the right of way became merged and extinguished. By deed dated in January, 1854, and recorded the following month, he conveyed the Werle parcel to Aaron Rumsey and inserted in the deed the clause contained in the deed from Bersch to Werle and quoted above. It will be noticed that the clause purports to reserve a right of way for the use of Frick, his heirs and assigns, who had theretofore parted with all his interest to Wolfert. The general rule is that a right of way cannot be reserved to a stranger. Bridger v. Pierson, 45 N. Y. 603; Hinckel v. Stevens, 165 N. Y. 171–175, 58 N. E. 879. Obviously the purpose was to reserve a right of way for the benefit of Wolfer himself as the then owner of the Frick parcel. Subsequently, by deed dated and recorded in April, 1854, Wolfer conveyed the Frick parcel to Atkins & Mulligan, with the clause "together with a right of way over a strip of land," etc. The Frick parcel and right of way were conveyed by the same description to various grantees until 1864, when West became the owner of it. The Werle or Rumsey parcel was subsequently conveyed to various grantees "subject to a road or right of way," etc., as above.

At the time of the conveyances by Bersch in 1847, there was no way or road whereby Frick could reach the old Grider Road without crossing the land of Werle. Though a right of way by necessity arose, it was deemed advisable to make express provision for it in the deeds to locate and define it. But in 1854 conditions had changed. It is said that portion of the strip of land which lies within the present bounds of Grider street has been used first as a private way, and since about 1849 as a public roadway; that in 1848 Wolfer gave to the commissioners of highways a release of all damages on account of the taking

of about 25 feet of his land for a highway, and yet, notwithstanding the substantial changes in conditions, Wolfer, when he came to make his conveyances of the Frick and Werle parcels, inserted in them the clauses contained in the former deeds as mentioned above. By these provisions he purports to create a private right of way in an existing public highway.

In determining the width of a way, a grant will be construed with reference to the place in which the way is granted and the circumstances under which the grant was made. Thus, where a way is granted over a piece of land of a certain stated width, it will depend upon the circumstances of the case whether the reference is to the width of the way, or is merely descriptive of the property over which the grantee may have such a way as may be reasonably necessary. 14 Cyc. 1202. The extent of the rights acquired must therefore depend upon the construction placed upon the terms of the grant, and, in construing such instruments, the court will look to the circumstances attending the transaction, the situation of the parties, and the state of the thing granted to ascertain the intention of the parties. In cases of doubt the grant must be taken most strongly against the grantor. Id. 1201, 1204; 23 A. & Eng. Encyc. of Law, 24.

In Tudor Ice Company v. Cunningham, 8 Allen (Mass.) 139, the court after stating that the grant was not of a mere right of way over a piece of land, but of a right of way in a street, remarked:

"In this respect the case is wholly unlike [Johnson v. Kinnicutt] 2 Cush. 153, which was only a grant of a right of way over a strip of land not used or described as a street, and where the description of the land was evidently not intended as defining the extent of the way granted, but only the place where a reasonable right of way was to be enjoyed."

The grant is not of a right of way 62½ links wide, but of a way over a strip of land 62½ links wide. The deed to Rumsey is made "subject to a road or right of way for the use of J. Frick * * * being a strip of land 62½ wide bounding in the easterly line of said lot." That is to say, the right of way shall be exercised over the strip designated, and not over the land generally for the purpose of reaching the Grider Road. This is not in terms a reservation to the grantor of 62½ links for a right of way, but a reservation of a convenient way within the limits described. The words simply describe the place in, through, and over which the grantor should have a right of way to the Grider Road.

It may be true as a general proposition that, where a right of way of a specified width is created by grant, the grantee is entitled to enjoy the full width. Still the deed should be construed with reference to the condition or state of things existing in 1854, and all the circumstances should be taken into account and considered. In 1854 it appears that 25 feet of the strip was a part of a public highway, and was used and enjoyed as a way to Grider Road. The remaining 16 feet was not then, nor ever has been during the period of half a century, used or recognized as a private way. The private right in and over the 25-foot strip became merged in the public right, if, indeed, it can be truely or accurately said that a private easement and servitude ever existed therein; for, at the time of the conveyance of Rumsey of the

servient estate, 25 of the 41 feet had already been appropriated to public use, leaving but 16 feet over which a private way could be claimed or exercised. Then it is evident the deed would have to be construed as though it had in express terms provided for a way of 16 feet only. Certainly the private easement cannot operate upon 62½ links, as the clause reads. The purpose of the clause in the Bersch deeds was, as we have already said, to provide a road or way to and from the Frick parcel to the old Grider Road. This the owner of the dominant estate has enjoyed for more than 50 years, though in common with the public generally, not merely the 25 feet, but the whole width of the highway. It is difficult to suppose that the grantor, Wolfer, intended to reserve a way over the 16 feet in addition to the public road. However this may be, all the landowners have acquiesced in the condition of things as they existed in 1854; and it may be inferred that they elected to consider the highway as a practical location of the supposed private right of way, or as a substitute for it. In view of the establishment of a commodious highway, it would be unreasonable to suppose or presume that the dominant owner designed at some time or other to open and maintain a private road at considerable expense over the remaining 16 feet, for the purpose of connecting his land with Delavan avenue.

Counsel for Mr. West lays stress upon the circumstance that subsequent conveyances of the Rumsey parcel contain the identical clause contained in the deed to Rumsey, and that thereby the grantees have recognized the existence of the easement. This does not appear to be of any particular importance or significance. West was not a party to those deeds; nor was it necessary or required that the same clause should be inserted in them, except for the purpose of avoiding a breach of covenant. Those conveyances recognize only such rights as West may have or possess, and no more. Clearly it appears that West has abandoned all claim of right to construct a private road over the 16 feet. While an easement acquired by grant cannot be lost by mere nonuser for any length of time, it may be extinguished by abandonment; and nonuser for a period of 20 years, under circumstances showing an intention to surrender the easement, is sufficient to extinguish it. The intention to abandon is the material question, and it may be proved by an infinite variety of acts. If the servient owner has acted upon such abandonment, and in regard to whom it would operate unjustly if the exercise of the easement should be resumed in favor of the dominant estate, added force is given to the claim of abandonment. Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; White v. Manhattan R. Co., 139 N. Y. 26, 34 N. E. 887.

The question of intention is one of fact to be ascertained from all the circumstances of the case, with due regard, of course, to the rules of law. And, where the question is one to be determined upon the facts of the case, no one case can be an authority for another. The court must investigate the facts for itself and determine whether the evidence adduced is sufficient to create a legal or moral certainty, either the one way or the other. Marden v. Dorthy, 12 App. Div. 193, 42 N. Y. Supp. 827.

Taking into consideration all the facts and circumstances we have alluded to, as well as those mentioned in the brief for the Zeigele Company, the court concludes that Mr. West is not legally entitled to the easement he claims, but, on the contrary, he has abandoned whatever right or interest he might have claimed, and is estopped from claiming anything. See In re North Fifth Street, 64 App. Div. 611, 71 N. Y. Supp. 644, cited in Re Eleventh Street, 64 App. Div. 609, 71 N. Y. Supp. 824, affirmed 169 N. Y. 607, 62 N. E. 1098 (no op.). Since the land of the Zeigele Company is not burdened with any easement, it is entitled to full compensation. It is also entitled to the value of the building as real estate, since it cannot be said that it was erected in "bad faith," nor was it planted for the purpose of enhancing the damages. In re City of New York (Briggs Avenue) 196 N. Y. 255, 89 N. E. 814.

Where a portion of a building has been taken, the proper measure of damage to the building is the difference between the value of it as it stood before, and what would be the value of the remaining portion after the improvement had been consummated. In re Lexington Avenue, 63 Hun, 629, 17 N. Y. Supp. 872.

The report of the commissioners is set aside, and a rehearing directed before the same commissioners.