Morris and Essex Railroad Co. *v.* Hudson Tunnel Railroad Co.

THE MORRIS AND ESSEX RAILROAD COMPANY and THE
   DELAWARE, LACKAWANNA AND WESTERN RAILROAD
   COMPANY *vs.* THE HUDSON TUNNEL RAILROAD COM-
   PANY and HASKINS.

1. The Hudson Tunnel Railroad Company, claiming to be a corporation organized under the General Railroad Law, having entered upon land of complainants without their consent, and having made large excavations therein, were restrained from further prosecuting their work until they should make compensation.

2. Such entry having been made, not only without the permission, but against the warning and protest of the complainants, the defendants have no equity to be permitted to proceed with their work, even in view of their effort to make compensation, on the ground of acting in good faith in beginning their work, and under misapprehension of the authority of the municipal authorities (by whose permission they entered) over part of the premises. There is neither mistake, accident, or exigency.

3. That part of the land taken was part of a public street, does not affect the right of the owners to compensation.

4. The necessity of first making compensation is not avoided by the plea that the work in which the defendants are engaged is an exploration. It is not the exploration contemplated by a charter, giving license to enter upon lands to *explore*, &c.

5. Equity will enjoin a trespass which is continuous, and invades proprietary rights.

On bill and answer, and affidavits annexed to each. On order to show cause why an injunction should not issue.

*Mr. Vanatta,* for complainants.

*Mr. John Linn,* for defendants.

THE CHANCELLOR.

The complainants, by their bill, pray, among other things, that the defendants, The Hudson Tunnel Railroad Company and Dewitt C. Haskins, president of that company, may be

restrained from entering upon land of the complainants, in Jersey City, and from doing any act thereon, in or for the construction of their proposed tunnel under the Hudson river. The land in question is bounded on its southerly side by the middle line of what is called Fifteenth street. The complainants, more than a year ago, as they allege, and about six months ago, as the defendants admit, erected a fence on a line about five feet distant northerly from the above mentioned middle line, and extending about eighteen hundred feet from Provost street to the river. They allege that they and those under whom they claim, have been, for a long time past, in the peaceable and lawful occupation of the premises. They deny that Fifteenth street has ever been laid out, opened, or worked, or in any way improved as a public street, over the premises in question, or that it has ever had any existence as a public street or highway there.

On the 18th of November last, the defendants entered on the premises, then in the exclusive possession of the complainants, and broke down and removed part of the fence above mentioned, and commenced digging there a large shaft, thirty feet in diameter, partly on the land in complainants' possession, and partly on land claimed by The Jersey Shore Improvement Company, and from that time until they were stopped by the *interim* injunction in this suit, they were engaged in that work with a large force of workmen. The bill alleges, and the statement is not denied, that the defendants have occupied, and are still occupying, the land claimed by the complainants, with large quantities of earth and other matter, thrown out in making the excavation, and have placed and deposited there engines, machinery, and tools, and large quantities of brick, timber, and other materials, to be used in the construction of the shaft; and that they have erected, partly on the complainants' premises, and partly on property claimed by The Jersey Shore Improvement Company, a large temporary building, about seventy-five feet long, and about forty-eight feet wide. The shaft is circular

in shape, and is being lined with a brick curbing of three and a-half feet in thickness.

The defendants claim to be a corporation under the act "to authorize the formation of railroad corporations, and regulate the same," (*Pamph. L.*, 1873, *p.* 88,) commonly known as the General Railroad Law; and they propose, as appears by their articles of association, to construct, under the provisions of that act, a subterranean and submarine railroad, to run through a tunnel, "from some convenient and eligible point upon the western shore of the Hudson river, and within or near Jersey City or Hoboken, and thence to run by the most direct and feasible route, under the bed of that river, to a convenient and eligible point in that part of the boundary line between the states of New Jersey and New York, lying between Jersey City or Hoboken, and the city of New York, there to connect with another railway to be similarly constructed under the laws of the state of New York, and extending into the city of New York." They seek to justify their entry upon, and occupation of, the premises, by a license from the board of aldermen of Jersey City. They allege, also, that their work is a mere exploration, and, therefore, may be regarded as but temporary in its character ; and they insist that their occupation of the premises is, at most, a trespass, of which this court, on well-recognized principles, will not take cognizance, and for which an ample remedy exists at law.

The bill raises the question whether the tunnel company is a lawful corporation, entitled to exercise the powers conferred by the general railroad law. It alleges that the land which the defendants have occupied, is "necessary, essential, and indispensable" to the complainants for the purposes of their franchises, and claims that, therefore, the tunnel company, if they are indeed entitled to the benefit of the provisions of the general railroad law, are, by the thirty-sixth section of that act, prohibited from taking that land, or any part of it, by condemnation or otherwise. It is unnecessary to consider either of these questions in disposing of the present motion. That the tunnel company have not made compensation to the

complainants for the land claimed by the latter, which the former occupy, and propose to take for their shaft and tunnel, is admitted. It appears that recently, and after they had entered upon the premises, and had taken possession thereof, they instituted proceedings, which are still in progress under the provisions of the general railroad law, to obtain an appraisement of the complainants' damages for the land taken and proposed to be taken. The fact that the complainants and those under whom they claim, have for a long time past been in peaceable possession of the premises, is not denied by the answer or the affidavits annexed thereto. That the tunnel company, if authorized to take the land, were bound to make compensation to the complainants before entering upon their property, will admit of no question. The general railroad law expressly provides that payment or tender of all damages for the occupancy of lands through, under, or upon which any railroad laid under the authority of that act, and its conveniences, appurtenances, and appendages may be laid out or located, shall be made before the company, or any person under their direction or in their employ, shall enter upon or break ground in the premises, except for the purpose of surveying and laying out the road and its conveniences, appurtenances, and appendages, and of locating the same, unless the consent of the owner of the land be first obtained. This right to compensation is secured by the provision of the Constitution, that private property shall not be taken for public use without just compensation, and that individuals or private corporations shall not be authorized to take private property for public use, without just compensation first made to the owners. If it be admitted that the premises in question are part of a public street, this will not affect the right of the complainants to compensation. It is settled, in this state, that a railroad company authorized to acquire lands for the use of their road by condemnation, and required to make payment or tender of compensation to the owners before occupying the land, cannot construct their road across or upon a highway, without making compensation to the owner of the soil

occupied by the highway. *Starr* v. *Camden and Atl. R. R. Co.,* 4 *Zab.* 592; *Central R. R. Co.* v. *Hetfield,* 6 *Dutcher* 206. " It would seem to follow," says Chancellor Green, treating of this subject in *Hinchman* v. *Paterson Horse Railroad Co.,* 2 *C. E. Green* 75, 78, " that the owner of the soil under a highway, cannot be deprived of his property, or be prejudiced in any right therein, without compensation, even by express authority of the legislature, without a violation of the pro- vision of the Constitution, which declares that private property shall not be taken for public use without just compensation." He adds, that this is especially true where the land taken is applied exclusively to the use of the railroad, as by tunneling under the highway for the railroad track. The case is not altered by the fact that the highway is a street in a city. *People* v. *Law,* 34 *Barb.* 494. Nor can the defendants escape from the necessity of making previous compensation in this case, by the plea that the work in which they are engaged is an exploration. They propose to sink their shaft to the depth of sixty-five feet, and if no insuperable difficulty presents itself, to proceed from the shaft to the construction of their tunnel, working it through the shaft. Though, in a certain sense, the shaft may be said to be an experimental work, and the enterprise tentative, it is obviously an abuse of language to term the work an exploration, within the meaning of the eleventh section of the general railroad law, by which license is given to enter upon lands or waters for the purpose of exploring, surveying, leveling, and laying out the route of, and locating, any railroad which it is proposed to construct under that act. Nor can the action of the defendants be regarded as a mere trespass. If the complainants' proprietary rights have been invaded, they are entitled to protection. Besides, the trespass is of a continuous nature. The defend- ants claim to be a corporation under the law of this state, and to be exercising powers derived from that law. They cannot be permitted to violate a provision of that law, intended to secure a constitutional right.

The defendants further insist that inasmuch as they have

already begun their work, acting *bona fide*, and at least under a misapprehension as to the authority of the municipal authorities over the premises, (they claim, however, that those authorities had full power over the subject,) they ought to be permitted to proceed, especially in view of the effort they are making to make compensation. But this case presents no equity in their favor. There is neither accident, mistake, nor exigency. They were bound to make or tender compensation before they entered upon the property; but the case shows that they entered on the premises and occupied them, not only without the permission of the complainants, but after refusal of such permission and against the warning of the complainants, given on the very day the defendants began their work. They cannot convert their wrong into an equity to protect them in persisting in the wrong. Assuming, then, for the purposes of this motion, that the tunnel company is a lawful corporation, duly organized under the general railroad law, and entitled to exercise the powers granted by that act, and that they may lawfully take, by condemnation, the land in question, and that the land is a public street, and that the board of aldermen could lawfully authorize them to occupy the street for purposes wholly foreign to, and incompatible with, the recognized uses of a street in a city, (on which point see *State* v. *Laverack*, 5 *Vroom* 201,) the defendants must, on the case made by the bill and answer, be enjoined from further prosecuting their work on the land until they shall have made compensation. This court is reluctant to interfere with the progress of public work, but it cannot fail to recognize and protect the constitutional rights of property.

The order to show cause will be made absolute, and an injunction issued accordingly.