JOHNSTON *vs.* HYDE.

The defendant, under and in the assertion of a claim of right, threatened to enter upon the complainant's premises, of which the latter was in possession, and himself to secure a right, of which he alleged he had been deprived, and, in so doing, would inflict irreparable injury on the complainant, who denied his right, and there was evidence in the defendant's answer, from which acquiescence, on the part of the defendant, might be deduced. The court restrained the defendant, by prelimary injunction, from doing the threatened injury.

On bill and answer. Motion to dissolve injunction.

*Mr. C. Parker,* for the motion.

*Mr. B. Williamson,* contra.

THE CHANCELLOR.

The complainant filed his bill for an injunction to restrain the defendant from entering upon the premises of the former, in Plainfield, and interfering with a wooden aqueduct which the complainant has placed there, and from interfering with the premises for any such purpose. On the filing of the bill an injunction was granted. The controversy between these parties is in reference to a raceway, running through the complainant's premises, which adjoin those of the defendant, to a pond on the defendant's land, the water from which pond was used for mill purposes there. The defendant claims the right to have and maintain the raceway in question as an open raceway; and, also, the right to free ingress, egress and regress, over a strip of land thirty feet wide, including the raceway, to amend the raceway, and repair and keep it in order. These rights he acquired, he insists, by the deeds of conveyance under which he claims title to his land, and the reservations in the deeds of conveyance under which the com-

plainant claims title to his property. The complainant, in or
about the fall of 1872, placed in the bed of the raceway, on
his grounds, a box culvert, which he covered up with earth,
filling the raceway to the surface of the ground. He then
covered the place thus filled up with sod, and across it con-
structed a macadamized road, leading from his mansion-house
to his stables on his premises. The defendant was then the
owner of the premises he now occupies, being the property
above mentioned as belonging to him. At that date the par-
ties were on neighborly terms. The defendant, in July, 1872,
sold and conveyed to the complainant a piece of his land, con-
taining about three acres and a-half, adjoining the complain-
ant's premises, as they were when the defendant purchased
his property. By the deed the defendant excepted and
reserved to himself, his heirs and assigns, the right of the
raceway, as it was then opened, leading to the pond below,
with all necessary rights to enter upon the premises, along
the line of the same for the purpose of cleaning it out and
keeping it in repair, as theretofore. In the fall of 1872, and
after the making of that conveyance, there was laid through
the complainant's land an avenue, called Farragut road.
The raceway crossed that road. According to the defendant's
statement, the complainant had proposed to lay in the bed of
the raceway, through his grounds, an iron pipe, of one foot
in diameter, and fill up the raceway. The defendant says he
refused to permit this. Shortly afterwards, he says, he saw
a wooden box culvert lying at Farragut road, and, being told
by complainant's carpenter that it was intended for carrying
the water of the raceway under ground, he objected to it, and
forbade it, and thereupon complainant, under date of Novem-
ber, 1872, wrote to him as follows: "The surveyors of Som-
erset county have prepared a wooden culvert, three feet wide,
to be placed in the Hotchkiss raceway, where it crosses Far-
ragut road. It is understood and agreed between us that, by
suffering this to be done, you are to lose no legal rights to
the present width of raceway, and that, in case of your find-
ing the flow of water insufficient, you shall have the same

rights as now to require the enlargement of the same. It is not the intention of this paper to give any rights, but only to guard against the loss of any that now exist." After receiving the letter the defendant made no objection to that arrangement, and it was carried out. Subsequently, the complainant caused a like culvert to be put in the raceway on his land, on both sides of that road, and covered up the box, filling in with earth to a level with the surface of the ground, as before stated. The defendant says he observed this to his surprise, but he seems, from his own statement, to have offered no objection, protest or remonstrance. He relied, he says, for the protection of his rights in the matter, on the assurance contained in the above letter. At that time the water in the raceway was not used for mill purposes. The mill on the defendant's premises appears, from the answer, not to have been used for over three years, from February, 1871, to July, 1874. At the latter date he repaired it, and in the succeeding fall he let the water into his pond, which was soon filled through the culvert. He alleges that it was due to the season, it being a time of freshet. Subsequently, having drawn off the water from his pond, he proceeded to fill it, and found that the supply of water was cut off. He then went on the complainant's premises to ascertain the cause, and discovered that the gate, which the complainant had placed at the mouth of the raceway, had been securely fastened down and prevented the flow of the water. The defendant removed the gate, and an altercation between him and the complainant took place on the occasion; the defendant claiming the right to have the raceway open, and to have the right of ingress, egress and regress, above mentioned. He admits that he intended, after demand and refusal, to open the raceway to a width and depth in accordance with what he regards as his right in the premises. To prevent this action on his part, the injunction was granted. Without reference to any other question, the case on the bill and answer, presents sufficient evidence of acquiescence on the part of the defendant to induce me to retain the injunction, with

Johnston v. Hyde.

the modification hereinafter stated, until the hearing. The threatened action of the defendant would inflict great and irreparable injury upon the complainant's property, to which the complainant should not be subjected, unless he is in the wrong. That action, if unwarranted, would be such a trespass as this court will restrain. *De Veney* v. *Gallagher*, 5 *C. E. Green* 33 ; *Southmayd* v. *McLaughlin*, 9 *C. E. Green* 181 ; *Farrow* v. *Vansittart*, 1 *Eng. Railway and Canal cases*, [*602.] The person who threatens it is not a mere stranger, without claim of right. He is one, who, under and in the assertion of a claim of right, proposes to enter upon the complainant's premises, of which the latter is in possession, and himself to secure the right of which he alleges he has been deprived. Under the circumstances, the defendant should be restrained, until his right shall have been established. His legal right is denied by the complainant. The latter insists, also, that if it existed, the defendant has, by his acquiescence, made it inequitable for him to assert it. This court can, on the hearing, determine the rights of the parties. Into the consideration of the question, the fact, character, extent and effect of the acquiescence will necessarily enter. Under the rule of this court, recently adopted, a hearing may be speedily had ; and, as the right shall appear on the hearing, the court may continue the injunction, or decree a dissolution of it, unless the complainant shall restore to the defendant his rights, within such short time as the court may deem reasonable. The motion is denied. The injunction, however, will be modified, so as to permit the defendant to enter upon the complainant's premises for the purpose of raising, and if necessary, of removing the gate at the mouth of the raceway, and any other obstruction to the flow of the water which, since the filing of the bill, has been, or at any time hereafter may be, placed or constructed therein.

Neither party will have costs of this motion.