PUBLIC SERVICE RAILWAY COMPANY, respondent,

*v.*

JAMES S. FRAZER et al., appellants.

[Argued March 9th, 1917. Decided June 18th, 1917.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, who filed the following opinion:

In this case I will announce orally the conclusions I have reached, leaving written conclusions or opinion to be filed hereafter, if necessary.

It is important, in the public interest, that the question of a preliminary injunction should be disposed of at once. There are one or two preliminary questions. One of them relates to the nature of the jurisdiction of the court of equity in cases of this kind. I think it rests on two familiar rules applying to that court. One is the ground of irreparable injury, and the other is the ground of the control of the management of a common easement. The injury is of a character that is usually classed with these so-called irreparable injuries. This is a technical legal phrase, meaning, as Judge Dixon defined it in *Hart v. Leonard, 42 N. J. Eq. 416, 420*, an injury for which the damages that may be recovered according to legal rules do not afford adequate compensation. Any considerable interference to public travel comes within the class which are called irreparable in-

juries. I had occasion to consider the equitable jurisdiction in this class of cases in the late case of *Public Service Railway* v. *Westfield,* which was considered in the court of errors and appeals also. *82 N. J. Eq. 63;* on appeal, *Ibid. 662.* It was not suggested at the argument by counsel on either side, but it occurred to me that this is also one of those cases where there is a common easement connected with the service of the public in streets, and there is also a dispute in relation to the use of the street in the respective rights of the parties. In such cases there is a right to control by the court of equity of the use which shall be made in common. The Public Service Railway Company claim a permanent or continuous right to the use of a portion of the surface of the public street for the purpose of public travel. The sewage commission and the contractors under them claim the right to the temporary disturbance of the surface of the street, including the removal of the railway tracks, for the purpose of exercising the right to construct a sewer. Questions arise here in relation to the extent of both rights, and it is a case where not only on the ground of control of a common easement, but also on the additional ground that this is the one court which by reason of its flexible procedure will be able to control and preserve the substantial rights of the parties *pendente lite* and pending the final disposition of the question of their rights. It cannot be done in any other way. So that I think it is one of those cases that comes clearly within the equitable jurisdiction, and this is apparently the view of all counsel, for, on both sides, by the record, the bill and answers, the question of legal rights has been submitted to the court of equity without objection on either side. Both sides have by the bill and answers submitted the question of their legal rights in the street, so that on the record there is no difficulty in considering these legal rights, so far, at least, as is necessary in order to dispose of this preliminary application.

This is an application for a preliminary injunction, and the general scope of that remedy is, that it goes so far, and no farther, than is necessary to preserve, as far as practicable, the rights of both parties pending the final determination, and subject to the final decision and decree. The bill is based on the

complainant's right to maintain and operate a street railway in Hamburg Place at the point in question, but it is not claimed that the right is absolute against all interference whatever, against other uses of the street that may be directed, either by the state immediately through legislative act or by delegation of its powers to a public body. Complainant's rights and franchises in the street are subject to the right of the state, either directly or by its agents, for that purpose, to interfere with and interrupt the travel over the complainant's railway so far as is necessary to promote other public service, such as sewers, for, which the use and control of the street may be necessary. The right to lay sewers and drains and to lay gas and water pipes in a highway are privileges annexed as incidents by usage or custom to the right of the public in a highway. *State* v. *Laverack (Supreme Court, 1870), 33 N. J. Law 201,* Beasley, Ch. J., *p. 206; Stoudinger* v. *City of Newark, 28 N. J. Eq. 187, 191;* affirmed on appeal, *Ibid. (1877) 446.* The general principle of the right to interfere with the surface of the street, where necessary for the construction of a sewer, is not disputed.

The questions in this case which are disputed by the parties are—(1) what is the meaning of the word "necessary?" and (2) who is to be the judge, finally, of what is necessary and to establish the limits of interference?

The state in this case has expressly given to the sewage commission powers of such interference. I refer to the statute now, for the reason that its terms were not specially referred to on the argument, and apparently the statute itself does not give an absolute right to interference, but gives a right with an express qualification. I refer to page 164 of the laws of 1900, chapter 102. Section 7 of this original act gives express power "to construct the sewer under, over or across any street  *  *  * in such manner, however, as not to unnecessarily obstruct or impede travel or navigation." That is the language of the grant. That is the same language used in the act of 1907, section 5, except that by some apparent clerical error the language in the latter act is "in such manner as not *necessarily* to impede." There may possibly be a mistake in the section as published in the pamphlet laws. But I take it that the two acts together

give the power to interfere, but with the limitation that the interference with travel must not be unnecessary. The commissioners must, in the first instance, construe that limitation, and it appears by their answer, and also by their affidavits, that on this question of interference with travel they have, in directing the construction of their sewer, considered that question as having a bearing on the method or manner of construction at different points. And in reference to what must be considered by the commission upon this question of obstructing and impeding travel, my view now is that that would include travel on the public streets by means of the street railway as well as other kinds of travel. In the first place, the only reason the street railway has any right on the public streets is because it is a part of the public travel, and this is the basis on which they get the right to occupy the streets without payment of compensation to owners of land. The street has been dedicated to public travel, and travel by street railway is a method of public travel. And in the second place, in a good many of the streets the travel by the street car constitutes the bulk of public travel. So, that the commissioners would be obliged to consider that method of travel in connection with other travel on the streets when they come to decide upon the method of constructing their sewers. It appears by the affidavit of their engineer, Mr. Brown, that this has been their practice, and that in certain parts of the city of Newark, considering the question of obstruction of travel, they have required tunnel construction, so that the construction would interfere little, if at all, with travel. For this particular location now in question they have considered the question of public travel and the obstruction of it, and in determining the question of what interference was necessary at this location for the purpose of carrying out the work which they were incorporated to do—that is, the construction of the sewer, they have determined that the construction shall be by the open-cut method. One of the main reasons, if not the main reason, in connection with the establishment of that method, was the addition to the expense which would be required by reason of the tunnel construction. In view of the entire situation they have determined that interference to a certain extent, and by the open-

cut construction is necessary, and they claim that they have the right to take into account the expense of the other method of construction in connection with the amount of travel that is disturbed, in determining the necessary interference with public travel for the purpose of carrying out the main work directed by the statute, the construction of a sewer under certain limitations as to cost.

The first point in dispute on the record here between the complainant and the commission, or the contractors claiming under the commission, is whether a necessary interference with travel does not mean necessary in the sense that it cannot be done otherwise, as an engineering or physical fact. My present view is that the words "necessary interference" mean "reasonably necessary," in view of the whole duties imposed on the commissioners by the act and of the whole scope of the act, and that they are therefore entitled to interfere to the extent that would be reasonably necessary, taking the matter of expense as one to be considered. The extent to which the commission have interfered, according to their claim made on the record at the hearing, is this—I call attention to it here especially because the contractors on their part insist that the interference is greater than the commission now say the interference is—the commission by their answer say that, claiming only the right to interfere so far as is reasonably necessary, in order to carry out the act, they have determined upon the open-cut method construction, but in order not to unnecessarily interfere with travel by the open-cut construction, they have provided by their contract for such construction for the continuance of the service of public travel during the removal of the tracks by the open-cut method. They say by their answer that this is what they intend to do, and that they have done so by the contract. This answer of the sewage commission is important in two aspects—*first,* as showing the judgment of the commission as to the extent of interference that is reasonably necessary—that is, not an absolute discontinuance of travel at the point where the open-cut section is provided, but an interference which, while it will remove those tracks during the construction, will also provide for the continuance of travel during the time of construction. Now, the com-

plainant has the right, so far as the commission is concerned, to accept that judgment of the commission as intending to provide for a continuance of travel during the construction. If it should turn out eventually by the final decision on the contract that the contract has not, as between the contractors and the commission, provided for this, that would not, according to my present view, affect the right of the complainants to claim that the interference should be on that basis—that is, providing for the temporary accommodation. The commission insist that by the proper construction of their contract such maintenance is provided for, and they refer to the clauses in the contract in which in general terms it is provided that the public service shall be maintained: Article 4, section 2, and also section 18, "wherever it is necessary to interfere with any existing structures (in the public streets) of whatever kind, the contractors shall maintain their respective service." The commission say "we have acted and our action is put in the formal shape of a contract, and we have there provided, and we intended to provide, for the continuance of the service." If this contention or admission of the commission were all there were in the case relating to the question of the amount of interference provided for, then, inasmuch as the contractors claim under the commission, and have no rights that are superior to the rights of the commission, the only question to be disposed of would be, whether the complainant's rights against the interference are as extensive as claimed in their bill. The claim apparently made by the bill is, that the interference must be "necessary," in the sense or meaning that the sewer could not from an engineering or physical point of view, be constructed without interference, and that the matter of expense, or at least such expense as would be incurred, is not an element in determining the necessity. My present view is that complainant's rights are not so extensive as claimed in the bill, and that their rights are only such as are consistent with an interference "reasonably necessary," and that I could not give any preliminary injunction based on their having a clear right to a broader kind of service and freedom from interruption. It is possible that on final hearing that broad claim may be determined to be their right,

but my present view is that it is not their right, and certainly this right is not so clear that an interlocutory injunction should go.

But this complication arises in reference to the admission or contention of the sewage commission as to their decision or determination upon this point of the provision they have made for maintaining the service of travel during construction. The commission do this work not directly but by contract. They do not act by ordinance, as does a common council;·their final action is the contract evidencing their determination, and from my reading of the statute, I take it that is the only method provided for their action—they have made a contract and thus have acted. The contractors now insist, by their answer and on the hearing, that by the proper construction of the contract the contractor is not required to maintain the provision for service of travel on complainant's railway pending the construction. The general expressions in the contract in which the phrase is used, the "contractors shall maintain the public service and shall not interfere with any existing structures," and which are relied on by the commission and complainant, do not, as contractors insist, by the proper legal rules applicable to the construction of contracts, extend so far as to include street railway service as a branch of the public service referred to. And their insistence upon that claim is, that this phrase is used in connection with other specified public service, such as gas, water and light, and therefore by the rules of construction applied to contracts, the provision for maintenance must be limited to the services specified and those structures of the character specially mentioned. That is the contractors' claim in reference to the contract. It at once introduces in this·case a complication which is perhaps an·additional reason for the final control of the whole question by a court of equity, because the complainant whose rights are interfered with being here and presenting this bill, its legal rights may be protected either to the particular extent it claims or to a narrower extent. The court on final hearing may give them just the right they are entitled to, and no more and no less. On the other hand, the commission who are here pro-. fessing to have acted for the purpose of securing the rights of

the complainant, and all the rights the commission consider complainant to be entitled to, presents its contract as the measure of the duty it intended to perform and as a performance of its full duty. If their whole duty has not been performed by the contract, and on the final hearing in this case it should be determined that the contract did not provide for the whole of their duty, then, so far as the complainant is concerned, the final question will be, is not the commission bound to do that, so far as the complainant is concerned, by protecting it against such interference as was not reasonably necessary? And if on the final hearing the claim of the contractors should be sustained, that this action of the commission, which is the only action by which they are bound, does not provide for the maintenance of travel, then the question would arise, is not the complainant, as against the commission, and also as against the contractors claiming under it, entitled to a decree that such protection should be afforded? And, as between the commission and the contractors, if the commission in making the contract with its contractors to take possession of the streets and to do this work, has made no provision for the maintaining of the public service—if that should be decided finally to be the construction of the contract—then, as between them and the contractors, the equities might be decided as upon an obligation on the part of the commission to furnish to the contractors the means for carrying out its contract and performing its duty. So, on the final decree of this case, if the contractors' claim as to the construction of the contract should be finally decided in their favor, it would settle the equities as between the commission and the contractors in reference to imposing any additional duty on them in reference to the construction of the sewer and the interference with complainant's travel. This is for the reason that, according to my present view, the complainant is entitled to be protected against any interference not reasonably necessary, and such protection would include provision for temporary accommodation of travel.

That being the situation as to the issues involved for the final determination, the question is as to the order which should be made on interlocutory injunction to preserve the rights of all

parties, so that on the adjustment by final decree they may be protected. And I think it is clear that on reading the affidavits, the question upon which the complainant and the contractors have finally split, is as to the expense: Who is obliged to pay the expense of this alteration, if made? The final disposition of that question should be left for the final decree in the cause on disposing of all equities. But it is a case where the continuance of the public service of both kinds cannot be left for the argument on final decision, and therefore the question is, on the record as it now appears, on this application for temporary injunction, who should, in the first instance, incur that expense? On the whole status of the case, as it appears on the records and affidavits now, my view is that the contractors should, in the first instance, incur this expense and provide for the protection of travel, by way of maintaining a temporary accommodation, and that their right to be reimbursed such expense, either from the complainants, if they are not entitled to be protected at all, as the contractors claim, or by claim against the commission for imposing on them in the construction of the sewer a work that was not included in the contract, would be settled by final decree at the hearing. The right to reimbursement from either one or the other, if their claim is finally established that it is not included in the contract, would be then decided. This can be worked out, as I think, by an injunction under the bill, and I give counsel the suggestion for the order for injunction.

The bill and the answer show that the contractors propose to tear up this track and remove it if the complainants did not remove it within a certain time fixed. That removal contemplated only the absolute discontinuance of travel. There was no suggestion in their letter about removing the track in connection with or for the purpose of providing any other track at that locality during the interruption. Their whole offer and their claim—as the claim is put here very fairly—is:

"We claim the obligation on the part of the railway company to remove their tracks at their own expense, and to discontinue all service at that location while we are building the sewer and to put back the tracks at their own expense when we are through."

That is the claim as made, not only in the letter, but also in the answer and on the argument. And then the threat follows:

"If you don't remove on that basis, then we will remove the tracks, allow travel so far as we are concerned to be discontinued until the sewer is finished and leave you to put the tracks back."

I think the contractors should be enjoined from tearing up the tracks, as threatened in the letter—that is, in connection with the claim that they have the absolute right to tear them up and leave travel interrupted, but that the injunction should not operate to prevent them from interfering or taking up the tracks in connection with and for the purpose of carrying out the provisions for a temporary accommodation while the tracks are taken up. For instance, suppose the offer had been in this case, "we now call on you to remove the tracks and offer to pay the expense, and also the expense of providing temporary accommodation, and if you do not within a reasonable time undertake to remove the tracks and provide temporary accommodation, we shall have to do it at our own expense." That is a different kind of an offer to tear up the tracks from the other, and it is an offer which would protect all the rights the complainant has, according to my present view. The offer on the part of the contractors, either to do the necessary work themselves or have the complainants do it at their expense, take up the tracks, and then replace the tracks, offering to pay the expense, if accepted, would allow this construction to be carried on, and in order to preserve the contractors' right at the final hearing, the order should contain the further provision that any such offer made, and any action or payments made in carrying out such offer, should not prejudice the complainant's right on final hearing to claim from either of the parties reimbursement of the whole or any part of the money expended. The order may be required to be worked out with some care, but I think counsel can get my view of the scope of it.

. The provision for a temporary side track is a method which all parties agree on, I think, as one method of temporary accommodation of travel. Mr. Brown in his affidavit says there may be others, but before signing the order, I would reserve the right to the parties to be heard, if they do not agree on the terms of

the offer. This may be settled finally by the court, if the parties do not agree.

*Mr. J. Edward Ashmead,* for the appellants.

*Mr. Frank Bergen,* for the respondent, Public Service Railway Company.

*Mr. Adrian Riker,* for the Passaic Valley Sewerage Commissioners.

PER CURIAM.

The decree is affirmed, with costs. We agree with the vice-chancellor's construction of the powers vested in the Passaic Valley Sewerage Commissioners and his definition of the word "necessary." We express no opinion on the question whether the covenants in the contract between the sewerage commissioners and the contractors can avail the complainant.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—12.

*For reversal*—None.