The bill of complaint seeks a decree construing a "grant of right of way" from the complainant to the defendant dated June 19th, 1931, or, in the alternative, its reformation, and *Page 404 
an injunction restraining the defendant from maintaining a boardwalk or trestle across Lake Denmark, within the boundaries of said right of way.
The complainant is the owner of a tract of land in Morris county, in the basin of which, between Copperas Mountain and Hibernian Mountain, Lake Denmark is located. This lake was created by an ancient dam near the southerly end built in connection with the early iron forge industry in New Jersey and is about two miles long, and three-quarters of a mile wide at its widest point. The whole tract upon which the lake is built comprises about one thousand six hundred and ninety-six acres. In 1931 the defendant company projected an electric transmission line across complainant's property designed to carry two hundred and twenty thousand volts, connecting its Roseland (Essex county) station with the line of the Pennsylvania Power and Light Company at Bushkill, Pennsylvania, on the Delaware river. The construction of the line necessitated the erection of steel towers, embedded in concrete, to carry conductors made of twisted wire strands supported from the towers by means of insulators designed for that purpose. Proceedings were begun by the defendant under the statute before the public utility commission for permission to condemn a right of way one hundred and fifty feet in width over complainant's property and pending appeal from the decision of that commission, an agreement between complainant and defendant was reached, which resulted in the execution by complainant of a grant of an easement to the defendant, the pertinent provisions of which are as follows:
"does grant and convey unto the said party of the second part, its successors and assigns, forever, the right, privilege and authority to use a tract of land as described below as a right of way, for the purpose of constructing, reconstructing, operating, maintaining and inspecting one or more lines for transmitting electrical energy, together with the poles, towers, conductors and all necessary appurtenances, upon, over, under, across and along the property of the party of the first part, situate in the Township of Rockaway, in the County of Morris and State of New Jersey, the said right of way being described as follows * * *."
(Here follows the description by metes and bounds.) *Page 405 
"Together with the right to trim, cut and remove all trees, buildings and other structures or obstructions now or hereafter existing thereon; also the right to trim and cut down thirty-three (33) danger trees to be designated by the party of the second part, said trees being located outside the limits of the hereinabove described right of way on the adjoining lands of the party of the first part.
"Also the right of ingress and egress to and from said right of way for the purposes hereinabove set forth over the existing private roads, driveways or lanes on the property of the party of the first part; the party of the second part to promptly repair, at its own expense, any and all such roads, driveways or lanes damaged by such use.
"The party of the first part reserves to itself, itssuccessors and assigns, the fee-simple and the full and completeenjoyment of and dominion over the hereinabove granted premisesfor any use or purpose not inconsistent with the uses andpurposes of the party of the second part as hereinabove setforth." (Italics mine, for later reference.)
"Nothing herein contained shall be construed to prevent the party of the first part, its successors or assigns, from raising the level or enlarging the area of Lake Denmark or its tributaries upon the right of way hereinabove described and granted."
The easement as agreed upon ran across a rocky projection or island in the lake and upon it the defendant company has erected a steel tower and conductors to which the transmission lines are attached.
During the course of the construction of this transmission line the defendant built the boardwalk or trestle to which objection is now made. The primary purpose of the trestle was to furnish a means of transportation of material for the tower to the island and the construction of the tower. The walk is substantially constructed and is built of planks laid upon cross beams attached to heavy piles driven into the bed of the lake. It is about five feet wide, two thousand six hundred feet long, and stands about three feet above the surface of the lake. The length of the walk from the easterly shore of the lake to the island upon which the tower is built is about one thousand seventeen feet and from there to the westerly shore about one thousand five hundred and eighty-nine feet.
During the course of the construction of the tower rails were laid upon the trestle over which material for the tower on the island was transported. After the construction was *Page 406 
completed the rails were removed but the boardwalk was permitted to remain. It is to the continued maintenance of this trestle or boardwalk that the complainant objects, while the defendant insists that such maintenance is within its rights obtained by the grant. The answer to the question thus raised depends upon the proper construction of the grant itself.
Defendant by its answer has challenged the jurisdiction of this court to pass upon the issue raised by the pleadings, but it seems to me that the jurisdiction is not open to question. The case comes well within the second class of cases listed by Mr. Justice Dixon in Hart v. Leonard, 42 N.J. Eq. 416. That class includes those cases "where the legal right is admitted and the object of the bill is * * * to ascertain the extent of the right and enforce or protect it in a manner not attainable by legal procedure." And see, also, 1 Pom. (4th ed.) 252; Pom. 4359
§ 1921. The legal right or title of neither complainant nor defendant is here in controversy, but only the extent of their respective rights, and neither party is in a position to deny the right of the other, because of the doctrine of estoppel. Den, exdem. Woolley v. Brewer, 1 N.J. Law *172; 21 C.J. 1070 ¶ 29.
But the classification set forth in Hart v. Leonard, supra, is not exclusive. Renwick v. Hay, 90 N.J. Eq. 148, 152.
Equity's jurisdiction to restrain a continuing trespass has long been settled (Southmayd v. McLaughlin, 24 N.J. Eq. 181; Morrisand Essex Railroad Co. v. Hudson Tunnel Railroad Co., 25 N.J. Eq. 384; Man v. Vockroth, 94 N.J. Eq. 511; Hirschberg v.Flusser, 87 N.J. Eq. 588), and this court has often entertained jurisdiction to enjoin the use of an easement in a manner different from the grant. Johnston v. Hyde, 25 N.J. Eq. 454;Jaqui v. Johnson, 27 N.J. Eq. 526; Lorenc v. Swiderski,109 N.J. Eq. 147.
No evidence was offered by either party which would justify a reformation of the grant here involved and that question may be eliminated.
The cause was tried upon the theory that the rights of the parties depended upon the necessity of the maintenance of this trestle or boardwalk for the full and complete use *Page 407 
and enjoyment of the easement granted. Counsel are agreed that the meaning of the word "necessary" as applied to this grant is "not that of a strict necessity in the sense of utter indispensability, but rather that of a `reasonable necessity' having in mind all the circumstances of the case." Such, undoubtedly, is the rule of law which should be here applied. That construction was placed upon the word "necessary" by our supreme court in Sayre v. Orange, 67 Atl. Rep. 933, which involved the right of eminent domain. It was there held that the word does not mean "absolutely necessary" or "indispensable" but that it is sufficient if the right proposed to be acquired is reasonably necessary to secure the end in view. See, also,Olmsted v. Proprietors of Morris Aqueduct, 47 N.J. Law 311, and Public Service Railway Co. v. Frazer, 87 N.J. Eq. 679,683. While the construction of an easement was not involved in any of those cases the principles of construction there applied are equally applicable here. And that is the general rule of construction as applied to grants of easements as laid down in19 C.J. 968 ¶ 202. See, also, 9 R.C.L. 784, 797. It is sometimes construed to mean mere convenience. 45 C.J. 580;Illinois Central Railroad Co. v. Anderson, 73 Ill. App. 621,627.
But "the servient tenement will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement" (19 C.J. 967 ¶ 202), and the use of the easement must not unreasonably interfere with the use and enjoyment of the servient estate. 9 R.C.L. 796 ¶ 53; 19 C.J.
¶ 247. And see Kentucky and West Virginia Power Co. v.Elkhorn City Land Co., 212 Ky. 624, and Taylor v. BritishLegal Life Assurance Co., 1 Ch. 395; 14 British Ruling Cases989.
The determination of the question of the reasonable necessity for the continued maintenance of this trestle or boardwalk is dependent first, upon the intention of the parties to be gathered from the language of the instrument of grant; and second, by the surrounding circumstances, including the physical conditions and character of the servient tenement, and requirements of the defendant for purposes of patrol, *Page 408 
repair and maintenance of its transmission line. 19 C.J. 907 ¶94. Complainant insists that the reservation contained in the italicized portion of the above-quoted provisions of the grant is an indication that it was not the intention of the parties that the complainant should by this grant release its control over the lands comprising the lake or of its surface, or their future development; that the intention was merely to grant the defendant the right to construct an aerial transmission line supported by the tower erected upon the island; and that that tower was the only structure which, under the grant, the defendant had a right to erect. Of course, the instrument granting the right of way must be read as a whole and so construed as to carry out the evident intent of the parties; but in case of ambiguity it should be construed most strongly against the grantor. Dunn v.English, 23 N.J. Law 126; 19 C.J. 907 ¶ 94. But I think it is safe to say that this reservation was not without its purpose. If it was not intended to be in some sense restrictive of the easement granted, then it was purposeless and meaningless, for without it "full dominion and use of the land, except so far as a limitation thereof is essential to the reasonable enjoyment of the easement" remained in the grantor. 9 R.C.L. 797 ¶ 54. A liberal construction of the grant to the point of mere convenience rather than to that of necessity ought not, therefore, be made.
Lake Denmark is a part of the Rockaway river water supply system composed of a gathering ground of one hundred and twenty-two square miles above the Jersey City reservoir at Boonton. That reservoir supplies water to Jersey City, Hoboken and other municipalities. Lake Denmark is available as an additional supply of water to that system and has great present, and greater future potential value for potable water supply purposes. The lower portion of this lake is an open body of water, but the upper portion, including that portion over which the right of way extends, is filled with tussocks or hassocks and a swampy growth of vegetation, through which the waters of the lake and the streams emptying into it from the north meander in undefined and unconfined *Page 409 
courses. There is, however, a channel from the lower body of the lake by means of which the trestle can be reached by boat at a point a short distance from the westerly shore. The defendant contends that its trestle or boardwalk is necessary for the efficient patroling of its transmission line and for its maintenance and repair, and that for effective inspection its patrolmen must work under or near the transmission line and close enough thereto to observe defects therein with the naked eye. Complainant contends, however, that such patroling may be effectively done by means of a boat and that material for repairs may by the same means be transported to the island upon which the tower is located. At the request of counsel I visited the locusin quo on the first day of the final hearing and inspected the boardwalk in controversy and the surrounding territory. My own observation leads me to say that it would not be feasible for the defendant to either patrol or maintain its lines by means of a boat under present physical conditions. While there is perhaps sufficient water for that purpose at some points where the right of way crosses the lake, there is insufficient water at other points, and the water is of such varying depths and the bottom conditions so uncertain that patrolmen could not, with safety, wade through this swampy morass. It has been demonstrated, however, by actual experiment, that the vegetable growth, the tussocks and hassocks, may be removed at a comparatively small cost and a channel or canal thus dug across the lake in the line of this right of way which would accommodate boats of sufficient size for all of the defendant's requirements. Such a canal or channel has already been opened by the complainant for a short distance from the easterly shore of the lake toward the island. But when defendant obtained its grant and began the construction of its transmission lines, it had to take conditions as it found them and it seems to me had a right to choose between the construction of the boardwalk or the dredging of a channel. It chose the former method without objection on the part of the complainant, although it appears that complainant knew of the defendant's carting piling and lumber to the location of the right of way; but the primary *Page 410 
right of the defendant was, I think, restricted to the erection of a temporary structure for construction purposes only, and not a permanent one, and that such was the defendant's purpose was, according to the only evidence touching the point, the thought in the mind of the complainant's president when he saw these materials. The present structure is admittedly of a substantial and permanent character and in my judgment its maintenance is not necessary for the proper patrol, repair and maintenance of the defendant's transmission line and appurtenances and was not in contemplation of the parties at the time the grant was executed. If its continued maintenance is in excess of defendant's rights under the grant, it constitutes a continuing trespass to the extent that such rights are exceeded. 19 C.J. 974 ¶ 218.
On the question of necessity, numerous expert witnesses were called to testify. Those called on behalf of the complainant testified that the maintenance of this walk is not necessary to the full and complete enjoyment of the easement, and those of the defendant upon direct examination testified that it is. But when this testimony is considered in the light of cross-examination, conflict between the various witnesses is not so great that it cannot all be reasonably reconciled. And it is all substantially to the effect that while the walk is highly convenient, it is not necessary, providing access to the island upon which the tower is built is afforded by means of a channel or canal deep enough and wide enough to accommodate a boat of sufficient size to transport men and materials. There seems to be no doubt but that so far as the wires themselves are concerned, as they span the waters between the towers, there is no necessity for the walk for inspection or maintenance. It is only with respect to the tower and its appurtenances that access to the island by means of a boardwalk or by boat is necessary. This is shown by the fact that other high voltage transmission lines cross bodies of water both in this state and out where no boardwalk is erected or considered necessary, all inspection and repairs being made by boat. The defendant's transmission line is of a very high order of construction. The life of the tower *Page 411 
has been fixed by the experts at from twenty to forty years, and it is agreed by them that probably no failure in this tower will occur during that period, and that maintenance is a very small item and practically negligible. With respect to the transmission lines themselves, that is, the wires, conductors, c., the application of modern scientific principles to the construction has practically insured its efficient operation without danger of serious injury or interruption of service. In the event of damage by lightning, which is apparently most to be feared, the operation of arresters or cutouts is effective to prevent serious damage, and the line is not one for the transmission of electrical current direct to the consumer. It is, as I understand it, a transmission line for storage purposes only. This same line, or other Public Service lines, crosses other bodies of water, including the Passaic river, Lake Mohawk, Longwood lake, Lake Wawayanda, Sand Pond and the Delaware river. There are also similar transmission lines spanning the Susquehanna, the Niagara, the Delaware river and numerous ponds, rivers and lakes. And in all the spans of the various transmission lines mentioned by the several witnesses in but two instances was any causeway, boardwalk or trestle built or used for construction or maintenance. One of these is near West Caldwell and the other near Trenton where the transmission lines span a swamp through which it would otherwise be impossible to either patrol them or transport material for their construction or repair. Under these circumstances it can hardly be said that such a structure was in contemplation of the parties, or at least of the complainant, at the time of execution of the grant. It was not a known requirement of the defendant. This fact, coupled with the fact that every expert witness who testified said that if means for patrol and maintenance by boat were afforded on Lake Denmark it would answer every necessary purpose, demonstrates quite conclusively, to my mind, that while the boardwalk here involved may be highly convenient, it is not, considering all the circumstances, reasonably necessary. And that is the conclusion at which I *Page 412 
have arrived. As already indicated, the reasonable necessities of the defendant and not mere convenience must control.
These conclusions are substantially the same as those announced by me at the close of the final hearings. Since then I have carefully read the complete transcript of the testimony, examined the various exhibits and considered the able briefs of counsel, but have found no reason for any change of opinion as then expressed. I then said that if I should decide to enjoin the defendant, that portion of the boardwalk between the easterly shore of the lake and the island should not be disturbed "until a channel or a canal of sufficient depth to accommodate the defendant's needs were constructed by the complainant." Counsel for the complainant, while denying any obligation so to do, now offers to bear the expense of digging such a channel as a condition of this court's granting the relief suggested. I consider this an equitable requirement. The existing physical conditions and the apparent necessity of access to the island, among other circumstances, warrant permission to the defendant to maintain that portion of the boardwalk unless and until the complainant dredges or constructs a channel or canal of sufficient width and depth to accommodate a boat large enough to meet all the defendant's probable requirements for purposes of patrol, inspection, repair and maintenance. The fact that the water level in this lake is under the complete control of the complainant should not be overlooked; and as a further condition of the suggested relief the complainant will be required to engage to maintain a sufficient head of water to guarantee sufficient depth of water in the channel to be constructed at all seasons of the year to accommodate the reasonable needs of the defendant.
The continued maintenance of that portion of the boardwalk extending from the westerly shore of the lake to the island will be now enjoined, and if the defendant desires to do so, it may construct a canal or channel over that portion of the lake.
I will advise a decree accordingly. *Page 413