Valentine v. Central Railroad Company.

JACOB VALENTINE *vs.* THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

1. A deed of conveyance to the Central Railroad Company contained the following reservation, viz., excepting and reserving to the said M. S., his heirs and assigns forever, the right and privilege to keep up and retain on said premises the small house and yard thereto attached, as the same is now located, forever, and also the right and privilege to enter upon said premises from time to time to make, amend and repair his mill-dams, and to remove from the pond the manure that may there accumulate from time to time. *Held*, that by that reservation the grantor and those claiming under him had the right to enter upon the premises, not only to amend and repair the dam, but to keep up and maintain all dams upon the premises in the same condition in which they were at the time of making the deed of conveyance, and that the grantees had not the right to take down or remove the dams, or any part thereof.

2. The grantor made an agreement with the company, granting to them the right and privilege to extend, widen and strengthen their embankment by the use of his lands, and relinquishing to them all claim for damages that might arise from the use of the rights and privileges thus granted, and also relinquishing all claim for damages which he had previously sustained at their hands; *held*, that this agreement did not give the company any right to take down or remove any part of the dam.

In error to the Somerset Circuit.

Argued before Justices OGDEN, HAINES and VAN DYKE, at June Term, 1860.

*G. H. Brown*, for plaintiff.

*F. T. Frelinghuysen*, for defendants.

The opinion of the court was delivered by

VAN DYKE, J. This is a special action on the case, brought by the plaintiff against the Central Railroad Company, in which he claims that he was lawfully possessed of a certain mill, mill-dam, pond of water, railway, &c., with which he was carrying on the business of a miller; and that, while so possessed and so engaged, the defendants cut and opened his said dam, and drew off and diverted the water from his said mill, by reason of which he was prevented from using the same, and in consequence of which he suffered the damage complained of.

It appears, by the state of the case, that the plaintiff, at the time of the injury complained of, was occupying the mill premises in question as the tenant of Miles Swaney, who was the owner thereof, and that the defendants, in August, 1855, opened and removed a portion of the dam in question, and drew off and diverted the water from the mill, and that the plaintiff suffered damage in consequence.

It also appears that in August, 1847, Miles Swaney, then the owner of all the premises, conveyed to the defendants a strip of land, containing the location or site of their road, making certain reservations, and that the dam, at the place where it was opened, was within the limits of the land so conveyed.

The reservations in this deed were as follows: " Excepting and reserving to the said Miles Swaney, his heirs and assigns forever, the right and privilege to keep up and retain on said premises the small house and yard thereto attached, as the same is now located, forever, and also the right and privilege to enter upon said premises from time to time to make, amend, and repair his mill-dams, and to remove from the pond the manure that may there accumulate from time to time." The judge in substance charged the jury, that inasmuch as Swaney had conveyed to the defendants the land occupied by the dam

Valentine v. Central Railroad Company.

at the place where it was injured, without having reserved the dam in question, or the right to maintain it, the defendants had the right to do the act complained of, and that the plaintiff could not recover. To this charge exception was taken.

It must be borne in mind, for it was so admitted on the argument, that the railroad in question was authorized, located, and constructed long before the deed of Swaney was made, and that at the time of the execution of that deed not only the railroad was there, but the mill, dam, pond, water, and raceway were also there. A part of the dam itself, forming the embankment on which the rails were laid, and that part of the tumble dam where the injury is alleged to have been done was also there. When, therefore, Swaney made the reservation in his deed of the right to enter on the premises thus conveyed, to make, amend, and repair his mill-dams, the reservation must be understood as applying to the dams that were then there, and as they were at the time; and when he reserved in very express terms the right and privilege to enter on the premises from time to time to make, amend, and repair his mill-dams, it must be understood that he reserved the right by making, amending, and repairing the dams, to keep them in the same condition in which they then were, and to make these amendments and repairs from time to time and at all times when, by accident or otherwise, they should become necessary; for it would be absurd, I think in the extreme, for Swaney to reserve the right to enter on the land for the purpose of making these amendments and repairs if he was not at liberty to make them when he got there. To my understanding it is very clear that the reservation in the deed left with Swaney the undoubted right to make, amend, and repair all the dams that were in existence at the time of making the deed, and that these terms, *make, amend,* and *repair* said dams, are fully equivalent to the words *keep up and maintain* such dams, and should have that construction. If, then, Swaney

Valentine v. Central Railroad Company.

had the right to keep up and maintain the dams, such right was wholly inconsistent with the right of the defendants to take them down. Both rights cannot exist at the same time.

The case seems to have been treated as though it were an action of *trespass*, brought to recover damages for a forcible injury done to the dam, as such, and title pleaded by the defendants; and the court finding the title to be in the defendants, with no sufficient reservation of the dam, held that the defendants had the right to do on their own premises the acts complained of, whereas the action is wholly different from this. It is an action *on the case*, in which the plaintiff alleges that he was lawfully possessed of a certain grist mill, mill-dam, pond, and raceway, by means of which the water was turned to his mill, and that, by reason thereof, he was enabled to carry on there to his advantage the business of a miller; but that the defendants removed or opened the dam, thereby diverting the water from his mill, and as a consequence thereof, he has not been able to use it, and has sustained the damages from that cause. Now in such case it is not material that the title to the soil where the dam was opened should be in either the plaintiff or his landlord. The question is not as to who has the title, but whether the plaintiff or his landlord has the right to keep up the dam. It is well known that a party cannot do on his own land that which injures his neighbor. If he builds a dam across a stream, and thereby throws back the water on his neighbor above, he cannot, when prosecuted for this injury, defend himself by showing that he has done nothing except on his own land. For the consequential damages he would certainly be responsible. So here, if the defendants have taken down a dam which the owner of the mill had a right to keep up, they will be responsible for the consequences, even though their whole operations were on their own soil.

This is a matter of great, and it may be of immense

importance to the mill-owner. It is not the mere question of damages sustained in this particular case while the dam was down, but if the defendants have the right to take this dam down they have the right to keep it down. If they have the right to keep it down for a week they have for a month and a year and forever, and if they have the right to take it down and keep in down at the point in question, on the ground that it is within the lines of their purchase, then they have the right to take down and keep down every particle of the dams which is within such lines, and if the mill-owner cannot construct a dam to convey the water to his mill without coming within those lines, and according to the map and on the argument he cannot, then his mill property is comparatively worthless.

This is precisely the condition in which the decision of the court below leaves him. No one can possibly suppose that such was the intention of the parties to that deed. It has a reservation in it, and that reservation is the right to *make, amend,* and *repair* these dams. Why was this inserted? Does it mean nothing? Nothing that is of any value? The decision of the court on this most important question is, that it reserves to him nothing of which he can avail himself, but that he is powerless in the hands of the defendants, except so far as they in their good nature may see fit to favor him. I cannot think so. I think it was intended to contain, and does contain, the reservation of a most important right, the right to keep up and maintain the dams in the same condition in which they were at the time of making the deed of conveyance, and that the defendants have not the right to take down these dams when they please, and keep them down as long as they please, and without the consent of the mill-owner, without being responsible to him for the damages which they cause him to sustain. The damages in this particular case, it may be, are not very large; but it appears by the state of the case that damages had been sus-

City of Hoboken v. Phinney.

tained, and I think the jury should have been permitted to ascertain the amount, and to find a verdict accordingly.

It is claimed, however, that Miles Swaney, by an agreement entered into between him and the defendants on the 10th of August, 1854, and previous to the injury complained of, released to them all claim for such damages as are described in this suit. Swaney, by that agreement, for the consideration of $400, granted to the defendants various rights and privileges, which enabled them to extend, widen, and strengthen their embankment by the use of his lands, and he relinquished to them all claim for damages that might arise from the use of the rights and privileges thus granted, and also released to them all claim for damages which he had previously sustained at their hands; but I do not find in the agreement anything that can be construed into a right to take down any of his mill-dams, or which exempts them from damages in case they should do so.

I think, therefore, that the judgment in this case should be reversed, and the usual course taken to have the cause tried anew, if the plaintiff desires it.

AFFIRMED, 5 *Dutch.* 561.