DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

AT MARCH TERM, 1862.

---

THE CENTRAL RAILROAD COMPANY *vs.* JACOB VALENTINE.

1. A deed of conveyance to the Central Railroad Company conveyed the land, upon which was an embankment that formed a part of the grantor's mill dam, and a bridge, through which the water passed from the pond, and the company used the embankment and bridge for the railroad track; the deed contained a reservation to the grantor, his heirs and assigns forever, of the right and privilege to enter upon the conveyed premises from time to time, to make, amend, and repair his mill dams and to remove from the pond the manure that might there accumulate from time to time. *Held,* that the grantor had the right to enter upon the conveyed premises, and do whatever was necessary to maintain this dam, provided it did not conflict with the use thereof by the grantees, and that the grantees had the right to do whatever was necessary to use the land for the purposes for which it was conveyed, even to cut the embankment and draw off the water, so long as was necessary for repairs or reconstruction of the embankment or bridge; *and held also,* that these rights would exist even if the deed had contained no such reservation.

2. Where the owner of land conveys a part of it, the grantee takes the part conveyed with all the benefits and burthens which appear at the time of sale to belong to it, and the grantor retains the adjoining property subject to the burthens and easements which the grant conveys.

561

3. The grantee takes the land conveyed, and the grantor holds the land retained, with the right to whatever is necessary to the enjoyment of their respective premises, for the purposes for which they are then, or are intended to be used, whether such intended use is mentioned in the deed or not.

4. If a landlord make an agreement which affects the use of premises then in possession of a tenant, or if he give a release for damages sustained by previous injury to the property, it will not affect the right of the tenant to recover damages for injury to his possession which occurred prior to the giving of the release or making the agreement.

In error to the Supreme Court.

*F. T. Frelinghuysen,* for plaintiffs in error.

*Beasley,* for defendant.

The opinion of the court was delivered by

The CHIEF JUSTICE. In this case two important rights come into apparent collision—the right of the railroad company to repair and alter their bridge and embankments—a part of their railroad—and that of the defendant Valentine's lessor, Swaney, to maintain his mill dam.

The former constitutes a necessary part of the latter. If the embankment of the company is taken away where it adjoins the dam, although within the limits of the land conveyed to them by Swaney, the continuity of the dam is broken, and the water runs out.

After the embankment of the railroad company was built, and the bridge also, through which the waters of the pond passed, and while the embankment constituted a part of the dams, Swaney conveyed the land covered by the embankment and abutments of the bridge and the open intervening space to the company.

At the trial, the court held that the right to the soil carried with it the right to excavate at pleasure even that part of the embankment necessary to the retention of the water in the pond, although the deed from Swaney to the company contained a reservation to him and his heirs and assigns forever of the right and privilege to enter

upon the conveyed premises from time to time, to make, amend, and repair his mill dams, and to remove from the pond the manure that might there accumulate from time to time.

The Circuit Court decided that the conveyance destroyed Swaney's right to 'abut his dam against the company's embankment.

The Supreme Court, reversing the judgment of the circuit, held that, by the reservation, Swaney retained the absolute right to have his dam at all times, without interruption, abut the embankment; and that the company could not, even for the purpose of repairing the embankment and bridge, which was a part of their road at that point, when it became necessary so to do, temporarily remove a part of it, to enable them to get at the foundations of the bridge, which stood in the waters of the pond.

From the course of the argument here and the opinion in the Supreme Court, it is evident that in both the inferior courts the parties, as well as the court, treated the case as if both rights could not co-exist, even in a modified form; that Swaney either had the right to a perpetual and uninterrupted connection between the embankment and his dam or no connection at all; and that the company could not, even in a case of necessity, cut away a part of their embankment, and thus open the dam, and keep it open long enough to enable them to repair the bridge, or if they could, they might forever keep the dam open.

Both courts determined the case upon too narrow grounds. It is manifest that, by the transaction which was consummated by the deed, neither of the parties intended to part with any right necessary to enable them, respectively, to maintain the dam, embankment, and bridge.

The company very properly supposed that the conveyance of the land covered by the embankment and bridge would confer upon them the right to use it for all the necessary and convenient purposes for which it was brought,

including the right of conveniently repairing their embankment and bridge. Swaney, that he was to enjoy his mill and dams as he had been accustomed to do, subject to the inconvenince of having a rail embankment and bridge in his pond, with the right of necessary and convenient reparation.

To carry out this reasonable purpose, the deed was given for the embankment and roadway sixty-six feet in width, reserving to the grantor the right to enter, and make and repair the dams at all times.

The conveyance by Swaney, even if it had not contained the reservation, would not have destroyed his right to have his dam abut the embankment as it did when he made it.

At the moment of the conveyance by Swaney to the company an easement by operation of law was created, by which the embankment conveyed to the company became burthened with the right of Swaney and his assigns to have it as a part of his mill dam, as it was at the moment of conveyance.

The marks of the burthen at the time of sale were open to view. The company saw that the embankment they purchased supported the waters of the pond. They took it *cum onere.* Swaney saw that the embankment and bridge were in his pond, and that if they needed repairs, it would be necessary, in order to enable them to be done conveniently, to draw the water from the pond, and to keep it drawn until the repairs could with due diligence be completed.

The principle upon which the case turns seems to be well stated by the court in *Lampman* v. *Milks,* 21 *New York Rep.,* 7 *Smith* 507, "That when the owner of two tenements sells one of them, or the owner of one entire estate sells a portion, the purchaser takes the tenement or portion sold with all the benefits and burthens which appear at the time of sale to belong to it, as between it and the property which the vendor retains." *Nicholas* v.

*Chamberlin, Cro. Jac.* 121 ; *Robbins* v. *Bairns, Hob.* 131 ; *United States* v. *Appleton,* 1 *Sumner* 492 ; *Hazard* v. *Robinson,* 3 *Mason* 272 ; *Pyer* v. *Carter,* 1 *Hurl. & Nol.* 916 ; *Gale and Whately on Easements* 39.

As the deed did not prevent the easement of the grantor, Swaney, from arising, so, also, the reservation, being only in affirmance of it, does not affect it. It is no broader, no narrower, than the right which the law would have given without it, except that the law gives what the reservation only implies, the right to the existing dam. The right which the company claims, of drawing off the water when necessary for the convenient reparation of the bridge, seems to rest upon grounds equally satisfactory.

The law preserving the rights of the parties upon a severance of ownership of the entire tract, by creating an easement in favor of the part sold or retained, according to circumstances, seems to proceed upon the idea that, in the absence of an expressed intention to destroy the burthen, none will be implied from the mere fact of severance. It could not have been the intent of the parties to destroy the conveniencies, because that intent was not distinctly expressed. The convenience or necessary arrangement shall remain, because its remaining is not inconsistent with the operation of the conveyance of the fee of the land, and effects the intention of the parties.

If the conveyance of Swaney to the company had been the grant of an easement only, instead of the fee of the land, the right of draining off the water, if necessary for the reparation of the bridge, would have followed as a secondary easement, necessary for the enjoyment of the principal one. *Gale and Whately* 324.

Whatever was necessary for the enjoyment of the thing granted passed with it. *Liford's case,* 11 *Rep.* 54, *a ; Shep. Touch.* 89 ; *Hobart* 284 ; *Vaughn's R.* 109 ; 1 *Wm. Saund.* 323 ; *No.* 5, *Co. Lit.* 59, *b ; Saunders' case,* 5 *Rep.* 12 ; *Howton* v. *Frearson,* 8 *T. Rep.* 56.

Swaney conveyed the two dissevered parts of the em-

bankment with the bridge standing in the water of his pond. The bridge was essential to the enjoyment of the road; it needed repairs or reconstruction in a more safe manner; these repairs could not be made without drawing down the water of the pond; the company could and did do this by cutting the earth of the embankment upon their own land.

The conveyance of a passage-way for pipes to carry water across the land of the grantor would carry with it the right to do upon the remaining land of the grantor whatever was necessary for laying or repairing them. *Pomfret* v. *Ricroft,* 1 *Saund* 323; see, also, *Clarence Railway Co.* v. *Great North of England Railway Company,* 13 *Mees & Wels.* 706, 721; *Hinchcliff* v. *Earl of Kinnoul,* 4 *Bing. N. C.* 1; *Dand* v. *Kingscote,* 6 *Mees. & Wels.* 174, and cases there cited; also, *Hodgson* v. *Field,* 7 *East* 613, in which it was held that by a grant of the liberty of making a sough in A.'s land, the liberty of making sough pits at any time afterwards while the object of the grant remained, being necessary for the purpose of repairing the sough, passed as incident thereto.

These cases, with many others which might be cited, illustrate the principle that with a grant or conveyance passes whatever is necessary to the enjoyment of the right or thing granted, and show that in its application the courts have been very liberal in construction, in order to carry out the presumed intent of the parties. Dand *v.* Kingscote is, perhaps, as strong an application of the principle as can be found. There the grantor in a deed of conveyance for lands excepted and reserved out of the grant all coal mines, together with sufficient way-leave and stay-leave to and from the mines and the liberty of sinking pits. It was held that the right to fix such machinery as should be necessary to drain the mines and draw coal from the pits passed, and that a pond for the supply of the engine, and likewise the engine-house, were necessary accessories to such an engine, and therefore

lawfully made. The case was elaborately argued and much considered.

The principle upon which it was decided was, that whatever was reasonably necessary for the enjoyment of the thing reserved might be done, that the usual and convenient modes of mining the coal with all the usual apparatus might be used, and that the party was not held to a hard necessity.

This doctrine of necessary incidents to the thing granted or conveyed passing with it, is only deducing the intention of the parties to a deed from the language of the instrument when applied to the subject matter.

If the land conveyed is the site of a dwelling-house, although that is not named in the deed, it is interpreted as if it had been expressly named, and the necessary appurtenances to the dwelling-house, as erected, pass by the deed.

So by the conveyance of a mill lot, with a mill turned by water upon it, the right to use the dam and the necessary pondage would pass as appurtenant, if the dam and pond were upon the remaining lands of the grantor. *Shepherd's Touch.* 89; 4 *Kent's Com.* 467; *Le Roy* v. *Platt*, 4 *Paige* 82; *Leonard* v. *White*, 7 *Mass.* 6; *Wetmore* v. *White and White*, 2 *Caines' Cas.* 87.

As incident and appurtenant to the conveyance of the embankment and bridge by Swaney, the right of repairing the bridge in the usual and convenient way also passed, that is by drawing off the water and keeping it drawn off the necessary time.

I think, therefore, that the company did right in drawing off the water, if that was the usual mode of repairing such a bridge, and keeping it drawn off sufficiently long to enable the repairs to be made, and that this question should have been left to the jury.

The action was by the plaintiff, as tenant to Swaney during the time the water was off, for compensation for the loss of the profits of his lease.

It was insisted by the company that the release executed by Swaney to the company, in 1854, discharged them from the damages occasioned by the act of cutting off the water while making the new bridge.

On the other hand it was insisted by Valentine that the release was not recorded, and not binding upon him without express notice of its existence.

To this the company replied that he was not Swaney's recognized tenant when the release was given, but a trespasser.

The agreement, called the release, is dated August 10th, 1854, and states the ownership by Swaney of the mill property and premises; that the railroad is constructed over the same; that the company propose to close from one hundred and fifty to two hundred feet of their bridge at this place by good embankments, in place of the open bridge; that Swaney claims to have sustained damage to his property by the works erected by the company in and about his mill premises; that Swaney, in consideration of $400 paid to him by the company, has agreed that they may close up two hundred feet in length of the east end of the bridge by removing so much of the bridge and substituting embankments for this purpose. Swaney conveys to the company sufficient land to enable them to do this, and for the protection, maintenance or erection of the slopes to the embankments or stone work of the bridges, &c.; also the right of entering and passing over the unenclosed land, for the purpose of making, amending or repairing said embankment, bridges or works of the company; he also releases to them all actions, causes of action, claims and demands whatever, which he then had, or which he or his heirs, executors, &c., can, shall or may have, by reason of any matter, cause or thing whatsoever that may have arisen, or can hereafter arise, to any of the said lands and property of said Swaney before mentioned, for or by reason of the erection of said bridges, and of the embankments adjoining thereto and connect-

ing therewith, for the uses and purposes of the railroad, and also for and on account of any flow or stoppage of the waters of said brook, or for or on account of any matter, cause, or thing that may have arisen, or that can or may hereafter happen or arise to the said mill property and lands of said Swaney, and the appurtenances, by or from the erection here-tofore made, or hereafter made, for the purposes of said railroad, as hereinbefore stated, or from any other cause whatever, relating to the premises.

The release discharges all claims for past damages which Swaney might otherwise have had against the company, on account of their works, or the consequences thereof, and also all claims and demands for anything which the company might thereafter lawfully do, either by virtue of that agreement or any other valid or subsisting deed and agreement between him and the company. It is a release of damages, past, present, or to come, caused by any past or future erection, *for the purposes of the railroad, as thereinbefore stated,* and from all the consequences flowing from them to his mill property and lands. It did not release the company from damages for any act of theirs unauthorized either by that or previous deeds, contracts, and agreements.

If, therefore, either that agreement, or the deed already referred to, gave the right to draw off the waters of the pond, in order to effect the alteration of the embankments and bridges stated in the preamble, all damages were released, flowing from the exercise of that right which Swaney might sustain.

If Valentine, who was in possession of the mill premises by an arrangement made with the present tenant, Patterson, at the time the release was executed, and had been so in possession from the first of April previous, and his tenancy was afterwards ratified and acknowledged by Swaney by the reception of the annual rent of $600, there can be no reason why the company should not respond to him in damages for any unauthorized act injurious to

his use of the mill property, done by them in August, 1857, after his tenancy had been recognized by Swaney.

The release, as far as appears by the record, is no answer to the plaintiff's action, even if he had notice of it, or if his right accrued after it was given, as it discharges no damages for *trespasses* committed after its date; so that, whether the right of the company ·to alter their bridge and embankments, so as to make them more safe and convenient for use, depends upon the previous deed, as was first given by the agreement, can make no difference.    In either case the right of the plaintiff to recover damages for unauthorized acts done in 1855, injurious to his rights as tenant, is complete.

As the case was decided against the plaintiff in the circuit on the construction of the deed from Swaney, of 11th August, 1847, which was prior to the plaintiff's occupancy and tenancy, the verdict of the jury does not settle the facts necessary to be found to determine the extent of the right of the plaintiff, as tenant, against the company.    A new trial is necessary for that purpose.

Nor does the verdict settle whether the dam was suffered to remain open longer than necessary to complete the bridge and embankments, or whether it was necessary to open it at all for that purpose.

Enough, however, appears by the record to show that both courts erred in matter of law, and that, in one aspect of the case at least, the plaintiff is entitled to a verdict, if he prove the necessary facts, and the defendants fail to make out a defence.

As the error of the Supreme Court consisted in awarding to the plaintiff the unqualified right to maintain the dam intact at all times, while the circuit denied him any right, holding, as we do, that the plaintiff's lessor has a right to have the embankment remain as a part of the dam, at all times except when it may be necessary for the defendants to draw the water off to repair or rebuild their bridge or embankments, and to keep it drawn off only so

long as that necessity continues, then to restore it to its former state by a renewal of the embankment, we think that the judgment of the Supreme Court must be affirmed.

*For affirmance*—The CHANCELLOR, the CHIEF JUSTICE, and Judges ELMER, VREDENBURGH, COMBS, CORNELISON, KENNEDY, and WOOD.

*For reversal*—None.