FREDERICK H. MAN, respondent,

*v.*

CHARLES A. VOCKROTH et ux., appellants.

[Decided February 2d, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following opinion:

"Complainant and defendants are respectively the owners of adjoining lands at Budd's Lake, Morris county, New Jersey. Both parties derive title from William Man, who purchased a large tract about 1875 and erected thereon a dwelling-house for himself and his family, with stable, barns,

carriage-house and other buildings such as would ordinarily
be attached to the country residence of a gentleman of means.
The house (and other buildings) stood back several hundred
feet from the public highway (and at an elevation there-
from), and access to and from the highway was by means
of a driveway or private road running down to the highway,
on the westerly side of the house.

"In 1885 complainant acquired from Wm. Man (his
brother) a part of the latter's land, easterly from the latter's
residence, and also built a residence. At the same time
another private road or drive was constructed, from the
William Man house, running down on the easterly side
thereof to the public road. This was built and used by the
two brothers. It was about twice as long as the original
drive, but an easier grade and better surfaced, and came up
between the two houses. The fee in the entire roadbed
belonged to William Man, complainant's line abutting it for
several hundred feet, and a spur being built to it from com-
plainant's dwelling-house.

"After the death of William Man, his widow and executrix
(with power of sale) conveyed in 1907 to complainant addi-
tional parcels of William Man's lands, including (as the
'second tract' in the conveyances) a tract lying between the
lands originally conveyed by William Man to complainant
and a north and south line some two hundred feet east of
the William Man dwelling-house. This tract included the
greater part of the jointly used private roadway (which will
hereafter be called 'complainant's private road') and the
conveyances contained a reservation of the use of this road
in the following language:

"'But there is reserved, however, a right of way over said private
road through the second tract to and from the dwelling-house now
or late of said William Man, for use by the owner or owners of said
house upon payments of one-half of the cost of keeping so much of
said private road as is within the boundaries of the said second tract
in repair, and any right of way heretofore claimed or exercised over
any of the land of said party of the second part or over said lane is
hereby released and extinguished.'

"About a year later, in 1908, the William Man residence and remaining lands were conveyed by the widow and executrix to a Mr. Beecher, and thereafter, by *mesne* conveyances, were acquired by the defendants in 1920. Defendants are utilizing their place for boarding-house or hotel purposes, and have added to their facilities by erecting last year an additional building, housing some fifty or more people. Concededly, the complainant's private road has been much used by defendants' patrons or guests, and by public conveyances and tradesmen because of the operation of the place as a hotel or boarding-house. Without at this time going into greater detail it is obvious that the use of this roadway in connection with defendants' premises is much greater in extent, and at least somewhat different in character than its use while the premises were occupied as a country residence.

"Complainant admits that defendants have a right, as owners of the William Man dwelling-house and lands, to use the private roadway, but contends that that right is limited under the terms of the reservation clauses in the deeds (by which the right was created) ; that defendants are exceeding their rights and casting additional burden upon the servient tenement; and ask an injunction or decree restraining such excessive use or abuse of the roadway.

"Defendants contend that their right of way, under the language of the deeds, is unlimited and unrestricted and appurtenant to their lands as a whole. They also set up in their answer allegations intended to show estoppel and acquiescence by way of defence against the suit; and other facts apparently intended to show that they have the unlimited right of way as a sort of way by necessity, claiming that the old original roadway on the westerly side of their house is unsafe and impassable, and that aside from the complainant's private road there is no other safe way or ingress or egress to and from their buildings from and to the public road.

"The first question to be determined arises out of the challenge by defendants of the jurisdiction of this court. Motion is made, pursuant to notice in the answer, to dismiss

33

the bill on the ground that it discloses no equity; that complainant has an adequate remedy at law; and that complainant is attempting to establish a legal title which can only be done by law. In so far as the motion is rested upon the first two grounds, it is immediately apparent that it must fail. The case made by the bill is one calling peculiarly for equitable relief; such remedy as complainant could obtain by procedings at law would be totally inadequate, as has been repeatedly adjudged. The only question needing consideration is whether or not there is such a dispute as to the existence of a legal right as is cognizable only in a court of law. If so, then this court could not undertake to determine that issue, but, following the customary practice, would retain the bill for a sufficient time to afford opportunity for that issue to be determined by a suit at law.

"It is by no means true that in every case where there is a dispute as to a legal right equity is without jurisdiction. The well-known classification of cases where equity has jurisdiction to protect and enforce private legal rights in real estate set forth by the court of errors and appeals in *Hart* v. *Leonard, 42 N. J. Eq. 416,* instances under the third heading therein, 'Cases where the legal right, though formally disputed, is yet clear on facts which are not denied and legal rules which are well settled, and the object of the bill is to ascertain the extent of the right and enforce or protect it in a manner not attainable by legal procedure.' It seems to me that the present case falls within that category.

"Complainant's ownership of the lands on which the private roadway is constructed is admitted. His right as such owner to be free from trespass thereon by others except to the extent to which legal rights have been acquired by others is also clear. Admittedly, defendants have a legal easement upon the roadway in question; but there is no dispute but that such right was acquired by and rests upon the reservation in the deed to complainant from the prior owner of the roadway and of defendants' premises. The only question in dispute (omitting from consideration for the present the allegations of estoppel, acquiescence and

'way of necessity') is the extent of the right of complainant; or, to put it conversely, the extent of .defendants' right whereby complainant's right is limited and cut down. This question of the extent of the right is as to the right itself, as distinguished from the lands covered by the right; there is here involved no issue as to the physical location or boundaries of the right, as there was in *Imperial Realty Co.* v. *West Jersey & S. R. R. Co., 79 N. J. Eq. 168.* There are no facts in dispute on this issue and the whole question of the extent of the *legal* rights of the respective parties rests upon the construction of the aforesaid clauses in the deeds and is determinable on 'legal rules which are well settled.'

"*Johnson* v. *Jaqui, 25 N. J. Eq. 410,* affirmed by the court of errors and appeals, *27 N. J. Eq. 526,* and cited by that court in *Hart* v. *Leonard, supra,* as illustrative of this class of cases, seems quite analogous. There, as here, complainant as the owner of the servient tenement sought to restrain defendant, the owner of the dominant tenement, from trespass or injury to complainant's lands in and about defendant's attempted exercise of his easement or right. The question was as to the extent of that right and depended upon the construction of the deed or instrument by which defendant acquired the right. This court construed the instrument, delimited defendant's right in accordance with such construction and restrained the attempted exercise of rights in excess thereof, and was sustained upon appeal. The question of jurisdiction seems not to have been raised; at any rate it is not mentioned in either opinion, but the question of jurisdiction was, of course, the sole question before the court of errors and appeals in its reference to this case in *Hart* v. *Leonard.*

"Another analogous case is *Taylor* v. *Public Service Co., 75 N. J. Eq. 37,* where this court determined the extent of defendant's right or easement across complainant's lands and restrained a user in excess thereof, and was affirmed upon appeal. *S. C., 78 N. J. Eq. 300. Northeastern Telephone, &c., Co.* v. *Hepburn, 73 N. J. Eq. 657,* while not a

strictly similar case, is nevertheless also an example of the exercise of jurisdiction in cases of this class.

"Do any of the other defences remove the case from the jurisdiction of this court? Certainly the defences of acquiescence and estoppel do not, for they are equitable defences. *Cf. Johnston* v. *Hyde, 33 N. J. Eq. 632* (at *pp. 640, 642, 643*); *Gawlry* v. *Leland, 40 N. J. Eq. 323* (which is also in point on the prior question).

"As to the so-called defence of 'way by necessity,' this is merely colorable. No real defence is set up, either legal or equitable—either under the allegations of the answer or the facts as proved at the hearing. The answer alleges that the private road in question 'has always been used by these defendants as the method of travel between the public highway and the premises of these defendants and there is no other safe means of getting from said public highway to the said premises,' and goes on to say that there is another road from the highway on to the premises, but it was never used by William Man or his successors in title because it is impassable and unsafe.

"These allegations, if true, disclose no situation of way by necessity. Where an owner of lands conveys to another an interior tract of those lands, abutting on no public way and having no appurtenant right of way or other means of access to such public way without trespass upon the lands of another, a right of way by necessity arises; but that is very different from the case at bar. Concededly, defendants' lands abut for several hundred feet upon the public highway. Access from defendants' buildings to the highway can be had over a road or roads constructed entirely on defendants' lands and entering the highway at any point along the abutting line, without trespassing on the lands of others or requiring any right to cross the lands of complainant or any one else. All that need be done is to construct a roadway—a mere question of trouble and expense. But the alleged defence is even less substantial than that, for by undoubted and undisputed proof the roadway on the westerly side of defendants' buildings was used for some nine years

before the new road was built, and during that time was the only road in existence. I am perfectly satisfied from the evidence that it has been used continuously ever since, even by defendants themselves, until it was boarded up by defendants last year, though undoubtedly its use was greatly lessened after the new road was built, because of the greater ease and convenience of the new road, and doubtless it has been suffered to fall into disrepair. The uncontradicted testimony, however, shows that by slight changes in location and grade, and resurfacing, at a total expense of only $350, it could be made practically the equal of the newer road. For defendant to contend that he has an unlimited easement arising by necessity over a neighbor's land simply because otherwise he would have to spend $350 on his own land is of course absurd and absolutely untenable either at law or in equity.

"I have no doubt, therefore, as to the jurisdiction of this court to determine the entire case on the merits, and defendants' motion is of course denied.

"Turning now to the merits, and first, as to the respective rights of the parties in and to the roadway in question, as arising out of the deeds. The right is created by a reservation in the deed conveying the fee in the roadway, whereby there was reserved out of the complete fee which would otherwise have been conveyed, 'a right of way over the said private road * * * to and from the dwelling-house now or late of said William Man, for use by the owner or owners of the said house,' &c. If there should be deemed to be any ambiguity or uncertainty about the reservation it must needs be resolved in favor of complainant's contention, for, in the first place, it is to be construed most favorably to the grantee, and, in the second place, construed in the light of the accompanying circumstances, which were that the two properties were and had for many years been residential properties only —summer country homes of the two brothers respectively.

"I am unable to see, however, that there is any necessity for resort to be had to other than the plain language of the reservation itself, to ascertain the character and extent of the

servitude thereby created. The right of way is expressly described or defined as being for passage over the private road to and from—not the lands remaining to the grantor, but a particular portion thereof—the particular dwelling-house of William Man thereon erected. Defendants contend that this is mere description for the purpose of physical identification of the road subject to easement, and points out that substantially similar wording is used earlier in the deed in the description of the boundaries of the lands conveyed: 'Along the southeasterly line of the private road leading from said public road to the house now or late of the said William Man, as the same winds or turns.' &c.

"This fact, however, so far from supporting defendants' contention, affords additional refutation thereof. Having in the earlier part of the deed fully described and identified the private road, and there being only one private road mentioned in the deed, there was no occasion in the reservation of the right of way to identify the road in question other than the 'said private road.' The additional words in the reservation 'to and from the dwelling-house now or late of the said William Man' were not necessary to identify the road in question, and were not used for any such purpose. If that had been the purpose, the words would have been '*to* the dwelling-house,' &c., just as in the prior description; not '*to and from,*' which are words in nowise apt or customary to express a description of the location of a road, but, on the contrary, are apt and customary to express the description of the use of a road—the character of an easement.

"The words 'to and from the dwelling-house,' &c., being then descriptive of the right and not of the location of the right, it seems so clear as to admit of no argument, that right is limited and not general. The right is not to and from the lands generally—the reservation does not say 'to and from lands remaining to the heirs and devisees of William Man,' but 'to and from *the dwelling-house*' of William Man, and 'for use by the owner or owners of said (*i. e.,* dwelling) house.' It is not to be used by the owners of any other por-

tions which might be sold off from the somewhat extensive grounds still left surrounding the dwelling-house, but only by the owners of the dwelling-house.

"It may be indeed that the right is not limited to the dwelling-house itself as a terminus, that it is appurtenant to all parts of the entire tract on which the dwelling-house stands, so long as they remain parts thereof (that question needs not to be decided) but it is certainly obvious that it is limited to dwelling-house purposes. Defendants cite *Bangs* v. *Parker, 71 Me. 458,* where a way was reserved 'to the barn standing on the  *  *  *  dwelling-house lot,' the barn in fact having been removed prior to the deed. It was held that the way was a way to a dwelling-house lot, but for such purposes as a way to a barn appurtenant to a dwelling-house would properly or customarily be used. So, here, whether the way is to the dwelling-house, or to the dwelling-house lot, it is for such purposes as a way to a dwelling-house is proper and customary to be used, and certainly excluded usage for hotel and boarding-house purposes, whether it be the William Man dwelling-house that is used as such hotel or boarding-house, or other separate and newly-erected buildings, or (as the admitted fact is) both.

"The user is only appurtenant to the particular dwelling-house (or, perhaps, one substituted in its place), and it is a user only of that kind, nature and extent which is suitable, customary and proper for a right of way for dwelling-house purposes. It is expressly 'for use by the owner or owners of said house,' not for use by tenants or occupants of other parts of the lands, or patrons of a hotel or boarding-house.

"If this easement extends to any other dwelling-house than the one expressly mentioned, then it extends to any number of such dwelling-houses erected on defendants' lands; and if it extends to one boarding-house or hotel building, it extends to any number of such buildings on those lands. The room is ample to erect a hundred or more of them, increasing the servitude to use by five thousand patrons with the addition of their accompanying conveyances, baggage transfer, tradesmen, &c. Doubtless defendants' counsel would not have the

hardihood to contend that defendants have such a right, yet it is logically and legally an inevitable conclusion from the claim asserted by them.

"The defendants' right is characterized and limited expressly as I have indicated, by the terms of the instrument creating it, and they have no right to extend it or add to the burden of the servient tenement against the will of the owner of the latter.

"Defendants contend that complainant has estopped himself from asserting his rights. The proofs, however, fall far short of establishing any such situation. They show, at most, that complainant stood by and said or did nothing while defendants erected their hotel building, until it was practically completed. For one thing, they fail to show that complainant actually knew or can be charged with knowledge or notice of the erecting of the building until it was nearly completed (it was erected during the period of the year when he did not occupy his house), but aside from that, complainant had no right to prevent defendants from erecting or maintaining a boarding-house or hotel, or any number of them, on their own premises. His right was that his roadway should not be used by the patrons of the hotel, but it is not necessary in anywise that they should use it. There was certainly nothing to indicate to him, nor is there any evidence in this case to show, that defendants would not have erected the boarding-house if they had known that complainant would refuse to permit his roadway to be used for the purposes thereof. Defendants, as has been said, have another roadway on their own lands, and have land enough to construct several more roadways.

"Neither does defendants'. claim of acquiescence rest upon any more substantial grounds. This defence is a *quasi*-estoppel. *Cf. 2 Pom. Eq. Jur.* § *817.* Taking the testimony at its strongest for defendants, it would appear that defendants' premises had changed ownership every year or two between the original sale to Beecher and the acquisition by defendants, and that two or three of the owners had during some periods made an excess user of the roadway. One

of the owners was a physician who had attempted to conduct a sort of sanitarium. There was testimony that at one time (perhaps for a week) there had been twelve or thirteen people at the place. It did not appear, however, that all these people used the driveway, or that there was anything like the use that was made last year, nor that complainant knew of the use that was actually made. It may be fair to assume that he knew that to some small extent an excess use was had, but assuming that to be the case, I can see no reason why he should be penalized for his failure to rush into court the moment any trivial violation of his rights occurred. A court of equity is certainly not going to foment friction and discord between neighbors and encourage litigation by adopting any such rule as that. Complainant testifies that on two or three occasions before bringing his suit he made objection, and, as between his testimony and that of the defendants (which was frequently evasive and unsatisfactory), I believe the former.

"Nothing more need be added to what I have already said as to the claim of way by necessity.

"Defendants have failed to establish any facts sufficient to disentitle complainant to the equitable relief he seeks, and the proofs and admissions show beyond peradventure that he is entirely justified in asking that defendants be restrained in the future from the acts which have been done by them and which they purpose to continue. Their barricade of the old roadway, and the placing of signs at the entrance of complainant's private road indicating that it was a public road to their hotel or boarding-house; the removal of complainant's signs to the effect that it was a private roadway; their advice to their tenants or guests to use the private roadway notwithstanding complainant's remonstrances and objection, all show much more than a passive or implied responsibility for the invasion of complainant's rights by persons other than themselves, and make the acts of those persons their own; and the restraint will be made broad enough to meet the situation arising from these circumstances. The form of decree may be settled on notice."

*Mr. G. Bartram Woodruff,* for the respondent.

*Messrs. Wall, Haight, Carey & Hartpence,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Buchanan.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WILLIAMS, VAN BUSKIRK—10.

*For reversal*—KATZENBACH—1.