44 N.J. Super. 180 (1957)
129 A.2d 899
ROBERT W. HYLAND AND FLORENCE HYLAND, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
DONALD A. FONDA AND MARY G. FONDA, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1957.
Decided March 11, 1957.
*182 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. George F. Losche argued the cause for appellants.
*183 Mr. I. Arthur Weiss argued the cause for respondents (Mr. Alexander M. MacLeod and Mr. I. Arthur Weiss, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a Chancery Division judgment in favor of defendants on plaintiffs' cause of action and on their own counterclaim. Involved is the extent of the easement across plaintiffs' land for passage to and from defendants' property, and defendants' right to repair the roadway by paving it with blacktop.
Plaintiffs are the owners of certain premises bordering on the east side of Chestnut Ridge Road in Saddle River Borough, having a frontage of 200 feet and a depth of 275. Defendants own the premises directly behind this property, having a width along plaintiffs' rear or easterly boundary of 200 feet and a depth of some 450 feet, with access to Chestnut Ridge Road over the easement here in question. The neighborhood is high-class residential, between suburban and semi-rural in character.
In 1951 the two lots constituted a single tract owned by Scientific Research Corporation which, in April of that year, conveyed the street-bordering portion to one Susan Scheitlin, the deed containing the following reservation:
"Reserving, however, unto the party of the first part [Scientific Research Corporation], its successors and assigns the right of ingress and egress for roadway purposes along a strip 25 feet in width along the entire northerly boundary for roadway purposes, together with the right to dedicate said strip, together with any additional land of the party of the first part for roadway purposes whenever a municipality shall accept the same as a public thoroughfare."
Miss Scheitlin conveyed this property to plaintiffs in August 1952, the deed being subject to the above reservation. Scientific Research Corporation conveyed the balance of its tract to defendants in August 1954. The deed expressly transferred the easement rights reserved in the Scheitlin deed.
*184 The present roadway is from 9 to 11 feet wide and runs for a distance of some 260 feet through plaintiffs' property. When plaintiffs bought in 1952, the first 65 feet of this roadway, leading to their garage, were paved with blacktop, the next 10 or 15 feet toward defendants' property were covered with small white stones, and the remainder within plaintiffs' boundaries was dirt and stone, which they later covered with bluestone dust. There was also a split rail fence along plaintiffs' entire frontage except for a 15' 3'' opening required for the driveway which, at that point, was 11' 6" wide. It appears that the roadway, both the paved and unpaved portions, was used in substantially the same condition by predecessor occupants of the dwellings of the respective parties.
By their complaint filed June 21, 1955 plaintiffs sought to enjoin defendants from disturbing the roadway across their lands, from changing or altering it from what it was before defendants in mid-May 1955 had traprock placed on the roadway preparatory to paving it with blacktop, and from imposing upon plaintiffs' land any greater servitude than might reasonably be contemplated under the easement. Defendants' answer denied the allegation of the complaint that if they paved the roadway "the rural charm and attraction of plaintiffs' land will be destroyed and plaintiffs' lands will be subjected to an unreasonable servitude, to plaintiffs' great and substantial irreparable damage and immediate loss and injury." In their counterclaim defendants asked for an injunction restraining plaintiffs from interfering with the paving, repair or maintenance of the roadway over the 25-foot right-of-way or any portion thereof or with the placing of a name sign on the right-of-way near Chestnut Ridge Road; enjoining them from any use of the right-of-way which would interfere with defendants' reasonable use over its entire 25-foot width for roadway purposes, and compelling plaintiffs to remove any obstruction from any portion of the 25-foot right-of-way.
The proof on behalf of defendants at the trial was that while the dirt and stone roadway looked "rather firm" and *185 "apparently in good condition" when they first occupied their property in August 1954, during the ensuing winter it "showed rapid deterioration," became soft and muddy, "deep ruts and holes appeared, and it was nearly impassable." Mr. Fonda said, "Before I would get stuck I certainly wanted to have the condition of it repaired." He then spoke to Mr. Hyland concerning the condition of the road and inquired where he might obtain white stone like that immediately adjacent to plaintiffs' blacktop so that he might fill in the ruts and holes and make the road passable. He testified that Hyland became very angry and said, "You are not going to do anything to that road; you have no right to do any repairs," and further stated, "There is another road going to be built in over there [near defendants' property]; why don't you use that?"
Thereafter the Fondas engaged a paving firm to blacktop the entire roadway. While there is some pretense in the testimony of the paving people of an initial hiring for repair short of paving, the testimony of Mr. Fonda, particularly that given on cross-examination, makes it plain beyond question that the "repair" work first done was merely preparatory to and a foundation for blacktopping. Before the work was stopped by a temporary restraining order issued by the trial court the roadway had only been covered with crushed stone. The representative of the paving firm admitted that in that condition there was not a proper repair of the road, even short of paving, "Because it is a heavy stone, and after that you should have a lighter stone, and then a dust to make it more passable." In answer to a leading question he said that crushed stone would have to be put on every year to maintain the road. The same witness testified that in the spring of 1956 the road "was all uneven again" and "ready for more repair." As noted, however, the road has never once been properly repaired by defendants.
At the hearing the trial court overruled, as immaterial, efforts on behalf of plaintiffs to prove that the value of their property would deteriorate if the road were blacktopped, and also an offer of photographs of plaintiffs' property to *186 show its nature, as material to "what the nature of that repair should consist of, bearing in mind the contiguous property and the nature thereof." The court explained the latter ruling by stating:
"I may save you both time right here by saying that I have no doubt in my mind that Dr. Fonda may repair the driveway to make it usable as a right of way to his property. * * * I also have no doubt in my mind that he may not put down a permanent pavement. * * *"
Nevertheless, in its written opinion the trial court held that "blacktop would come under the heading of repair." It found that
"* * * Summer rains and winter storms continually cause ruts and holes to appear which require constant attention. Blacktop is a semi-permanent dressing commonly used for driveways. It does not have the permanent qualities of asphalt and concrete. I cannot agree that its use would constitute an added burden on the property of the plaintiffs."
The court also held that defendants had a present right to use and blacktop the entire 25-foot strip, the injunction directing plaintiffs "to remove from said 25 feet width roadway-easement all trees, shrubs, fences and signs now upon said 25 feet width roadway-easement." This would, of course, necessitate dismantling part of the rail fence in front of plaintiffs' property and the removal of their name-sign.
Plaintiffs contend that the language of the easement reservation giving defendants "the right of ingress and egress for roadway purposes along a strip 25 feet in width along the entire northerly boundary for roadway purposes," does not import that such right-of-way cover the entire 25-foot width. They claim the quoted language was merely descriptive of the property over which the original grantor and its assigns were to have such right-of-way as might reasonably be necessary for roadway purposes. In short, the right-of-way was to be located within the strip, but not to cover its entire width. In aid of this contention they *187 call upon the contemporaneous construction placed upon the easement reservation by those directly interested, and point to the fact that use of the way has always been confined to a width of some nine feet.
The reservation under consideration, as noted, employs the words "along a strip 25 feet in width along the entire northerly boundary." Webster's New International Dictionary (2d ed., unabridged, 1951) defines "along" as
"* * * prep. * * * 1. lengthwise of, in a line with or parallel to the length or boundary of; implying motion or extension upon, or at or near, the side of, according to the context, * * * 2. from one point to another of, or through; * * *.
adv. 1. a. in a line with the length or side of something; * * * b. at full length; * * *."
Clearly, "along" connotes length, so that the right-of-way here given is to be enjoyed within a 25-foot wide strip running the entire length of plaintiffs' northern boundary.
The instrument granting or reserving a right-of-way must be read as a whole and construed to carry out the evident intent of the parties. In case of ambiguity it should be construed most strongly against the grantor. Lidgerwood Estates, Inc. v. Public Service Elec. & Gas Co., 113 N.J. Eq. 403, 408 (Ch. 1933). However, when the intent of the parties is evident from an examination of the instrument, and the language is unambiguous, the terms of the instrument govern. 6 Thompson, Real Property (rev. ed. 1940), § 3486, pp. 720-721.
Where the width of the roadway is definitely fixed by the grant or reservation creating the same, its use may be commensurate with the entire width thereof. 2 Thompson, Real Property (rev. ed. 1940), § 574, pp. 179-180. It is equally well settled, however, that when there is any ambiguity or uncertainty about an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement, and the requirements of the grantee, play a significant role in the determination of the controlling intent. Lidgerwood Estates, Inc. v. Public Service Elec. & Gas Co., above, 113 N.J. Eq., at page 407; Man v. *188 Vockroth, 94 N.J. Eq. 511, 517 (E. & A. 1923). We cannot say there is no ambiguity on the face of the grant here involved concerning the matter of the physical area over which defendants have a present right of roadway use. The language of the reservation does not specifically describe the intended roadway as 25 feet in width (cf. Barry v. Tunick, 95 N.J. Eq. 94, 95, 97 (Ch. 1923), reversed on another ground, 97 N.J. Eq. 281 (E. & A. 1925)); it provides a "right of ingress and egress for roadway purposes along a strip 25 feet in width," etc. This kind of ambiguity is frequently found, and the pertinent rule is accurately stated in 28 C.J.S., Easements, § 77 (a) (3), pp. 756-7 (1941) and pocket part:
"* * * where a way is granted over a piece of land of a certain stated width, it will depend upon the circumstances of the case whether the reference is to the width of the way, or is merely descriptive of the property over which the grantee may have such a way as may be reasonably necessary."
Dalton v. Levy, 258 N.Y. 161, 179 N.E. 371 (Ct. App. 1932); Grafton v. Moir, 130 N.Y. 465, 29 N.E. 974 (Ct. App. 1892); In re City of Buffalo, 65 Misc. 636, 120 N.Y.S. 611 (Sup. Ct. 1910); Barrett v. Duchaine, 254 Mass. 37, 149 N.E. 632 (Sup. Jud. Ct. 1925); cf. Nash v. New England Mutual Life Ins. Co., 127 Mass. 91 (Sup. Jud. Ct. 1879); and see 2 Walsh, Commentaries on the Law of Real Property, § 249, p. 668 ff. (1947); Annotation, 28 A.L.R.2d 253, 265 (1953). As the court in the Dalton case, above, epitomized the holding in the old Massachusetts case of Johnson v. Kinnicutt, 56 Mass. 153, 157 (Sup. Jud. Ct. 1848), "The grant of a right of way `through and over' a space twenty feet wide is `the grant of a convenient way' within those limits."
Resort to surrounding circumstances leaves no doubt in our minds that the reservation before us is not to be construed as having necessarily withheld for the benefit of the occupants of the rear property a continuous right to the absolute use at all times of a roadway actually 25 feet wide, whether or not so much was reasonably necessary for ingress and egress. So to suppose would be to say that when Miss *189 Scheitlin, the first grantee of a deed containing the reservation took title, the parties to that instrument contemplated that the existing fence with a 15-foot opening was to be torn down and the existing 9- to 11-foot physical roadway widened to 25 feet whenever the rear occupant merely so desired. The circumstances clearly belie such intent.
We do not overlook the provision in the reservation for possible dedication of the 25-foot strip to the municipality for street purposes, but we regard that risk as one which the grantee of the fee was willing to assume on the speculative contingency that "a municipality shall accept the same as a public thoroughfare." This is entirely consistent with the understanding that unless and until that event occurred the physical roadway was to cover no more of the strip than might reasonably be required as a vehicular access and egress for the use of a one-family dwelling on the rear premises  i.e., the then existing use.
This construction conforms with the settled principle that "the servient tenement will not be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement * * * and the use of the easement must not unreasonably interfere with the use and enjoyment of the servient estate." Lidgerwood Estates, Inc. v. Public Service Elec. & Gas Co., above, 113 N.J. Eq., at page 407.
We are not to be understood as implying that any portion of the 25-foot strip is exempt from potential future use by the dominant tenant if at some time it is reasonably necessary for convenient roadway access under the circumstances then existing. We hold only that such circumstances do not now exist and that the permissible user at this time does not extend to an area exceeding the physical area of the heretofore existing roadway.
Our next consideration is of the adjudication that defendants may pave the access roadway with blacktop. There is no difficulty as to controlling principles of law; the problem is in their application to the facts at hand. The owner of a dominant estate may do that which is reasonably necessary *190 to enjoy the easement and, as an incident thereto, keep it in repair and fit for use. Central Railroad Co. v. Valentine, 29 N.J.L. 561 (E. & A. 1862), affirming 29 N.J.L. 60 (Sup. Ct. 1860); United N.J.R.R. & Canal Co. v. Crucible Steel Co., 85 N.J. Eq. 7 (Ch. 1915), affirmed 86 N.J. Eq. 258 (E. & A. 1916); Ingling v. Public Service Elec. & Gas Co., 10 N.J. Super. 1 (App. Div. 1950); Washburn, Easements and Servitudes (3d ed. 1873), § 1, p. 685; 17 Am. Jur., Easements, § 111, p. 1005 (1938). But the easement may not substantially be altered physically without the consent of the owner of the fee. Lorenc v. Swiderski, 109 N.J. Eq. 147 (Ch. 1931); 17 Am. Jur., Easements, § 112, p. 1006 (1938); 28 C.J.S., Easements, § 95(a), p. 776-777 (1941). This does not mean, however, that all changes are prohibited.
"So long as the use of an easement is confined to the purposes under which it was acquired and created without increasing the burden on the servient estate, the owner of the easement * * * may make changes that do not impair or affect its substance." 28 C.J.S., Easements, § 95(b), p. 777 (1941).
But the rights of the dominant tenant are not to be measured in terms of mere convenience, rather than reasonable necessity. Lidgerwood Estates, Inc. v. Public Service Elec. & Gas Co., above, 113 N.J. Eq., at page 408; Lorenc v. Swiderski, above, 109 N.J. Eq., at page 148; 28 C.J.S., Easements, § 95(b), p. 777 (1941). In determining whether the paving of this roadway with blacktop is so substantial an alteration of the terrain as to be adjudged beyond the reserved right, we should consider not only the intrinsic physical change but weigh in the balance the degree to which the change accords with the reasonable necessities of the dominant owner in terms of repair and maintenance, as against the effect thereof upon the use, enjoyment and value of the property of the servient tenant. Annotation, 112 A.L.R. 1303 (1938). As noted, evidence of the effect of this work on the value of plaintiffs' property was excluded, as well as of the nature and character of the plaintiffs' property as a whole. This seems to us to have been unjustified. A long stretch of paved blacktop traversing the full depth of a *191 particular semi-rural homestead might well react adversely upon its value and attractiveness, and this notwithstanding that the portion from street to garage is already paved in that fashion. These considerations are not necessarily decisive, but they are material.
The construction of a concrete pavement over an easement of way without the consent of the owner of the fee has been held in this State to be an unauthorized improvement. Lorenc v. Swiderski, above; similarly as to the use of flagging and concrete, Reichert v. Gill, 112 N.J. Eq. 510 (Ch. 1933). Accord: Littlefield v. Hubbard, 120 Me. 226, 113 A. 304 (Sup. Jud. Ct. 1921). But where the nature of the intended use of a way or road is such that a volume or character of traffic fairly requiring a paved or other heavy artificial road surface may be seen to have been contemplated, it will be permitted. Herman v. Roberts, 119 N.Y. 37, 23 N.E. 442, 7 L.R.A. 226 (Ct. App. 1890); Newcomen v. Coulson, L.R. 5 Ch. Div. 133 (Eng. C.A. 1877); Heuer v. Webster, 187 Ill. App. 273 (App. Ct. 1914). In other words, "the right of the abutting owners must be subject to the right of appropriate adaptation of the surface of the way for the use designed in its creation." Freeman v. Sayre, 48 N.J.L. 37, 43 (Sup. Ct. 1886). See, generally, Annotation, 112 A.L.R. 1303, 1308 et seq. (1938).
With all deference to the thoughtful consideration given to this problem by the trial judge, we are unable to concur in his conclusion that blacktopping was a permissible repair in the present case, particularly in the light of his rulings on evidence at a time when he was of a different mind. The decisive consideration in this case is that the defendants never attempted to make a standard repair of this roadway, short of the work preparatory to blacktopping. The roadway had apparently been used as a way of vehicular access to the rear property for an unknown length of time prior to defendants' incumbency. It was, prima facie, to continue to serve as such in its character as a dirt road when the reservation was incorporated in the deed to plaintiffs' predecessor.
*192 We do not propose to decide in the present case when, if ever, the paving of this road against the will of the servient owner will be lawful, consistent with the controlling principles we have mentioned. Other factual presentations will dictate pertinent solutions. We here hold that defendants did not show such reasonable attempts to repair and use the roadway in its existing character, before undertaking to pave it, as justifies under all the circumstances, including the prospective impact upon plaintiffs' rights, a conclusion that such paving was necessary to afford defendants the roadway access that was fairly in contemplation when the grant was created.
There was also a dispute between the parties as to defendants' claimed right to maintain a name sign in the easement area at the entrance to the common driveway on Chestnut Ridge Road. The easement grant reasonably implies such a right, as this is the street entrance to defendants' home as well as to that of plaintiffs. The judgment will provide that defendants may erect such a sign of reasonable size and appropriate design within the 25-foot easement area.
The judgment is reversed and the cause remanded with directions for the entry of judgment in favor of plaintiffs consistent with this opinion.